**Brigitte SHAMOUN, Appellant**

v.

**Lisa R. SHOUGH, Appellee.**

No. 05–10–00455–CV.

Court of Appeals of Texas, Dallas.

June 7, 2012.

Rehearing Overruled Sept. 27, 2012.

Jonathan J. Cunningham, C. Gregory Shamoun, Kevin Courtney Moran, Shamoun & Norman, LLP, Dallas, TX, for Appellant.

Lawrence L. Mealer, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and MARTIN RICHTER.

## OPINION

Opinion By Justice FITZGERALD.

In this landlord/tenant dispute, the trial court entered judgment for appellee Lisa R. Shough (Landlord) after a jury trial. In four issues, appellant Brigitte Shamoun (Tenant) contends the trial court erred in entering judgment for Landlord because

the jury's answers were conflicting and were not supported by evidence. In a cross issue that Tenant contends was not properly preserved, Landlord challenges the amount of attorney's fees awarded in the judgment. We overrule Tenant's issues and Landlord's cross issue but modify the judgment in accordance with the provisions of sections 92.108 and 92.109 of the Texas Property Code. *See* TEX. PROP.CODE ANN. §§ 92.108, 92.109 (West 2007). We affirm the trial court's judgment as modified. *See* TEX.R.APP. P. 43.2(b) (court of appeals may modify trial court's judgment and affirm as modified).

## BACKGROUND

Landlord leased her residence to Tenant for a one-year period to commence on August 26, 2004, and end on August 31, 2005. Tenant leased the home for herself and her son after separating from her husband. The parties signed a written lease requiring Tenant to pay monthly rent of $4,800. At the time the lease was signed, Tenant paid Landlord the amount of $35,529. This amount included a security deposit of $4,800, a pet deposit of $1,000, six months' advance rent, and a prorated amount for the August 2004 rent. The lease permitted Landlord to deduct "reasonable charges" from the security deposit for damages to the property, excluding normal wear and tear, unpaid or accelerated rent, unpaid late charges, and a number of other charges specifically listed in the lease agreement. The lease also granted Tenant the option to purchase the property at any time during or at the end of the lease term. Tenant agreed "to tell the landlord her intent to move, purchase or renew this lease at least, 45 days, prior to her expiration date which will be no later than June 15, 2005." The same provision of the lease also stated that the property "will be marketed only during the last 30 days of occupancy." In June 2005,

Landlord called Tenant to discuss sale of the home. Although the parties dispute the facts surrounding the events in June and July of 2005, they agree that Tenant was not interested in either renewing the lease or purchasing the home, and vacated the home before July 21, 2005. The Landlord's sale of the home to another buyer closed in late July. Tenant reconciled with her husband and moved back into their home. Landlord did not return Tenant's security deposit, and Tenant did not pay the July rent.

In a letter to Landlord dated August 3, 2005, Tenant demanded return of the security and pet deposits as well as reimbursement of expenses for repair of the air conditioning system and maintenance of the pool/spa. The letter was signed by Gregory Shamoun, an attorney and Tenant's spouse. In a letter to Gregory Shamoun dated August 24, 2005, Landlord demanded payment for the July rent, late fees and charges, and amounts for "significant damages to the carpet and wood floors," for a total of $7,900. In October, 2005, Tenant filed this suit, alleging causes of action for violation of the Texas Property Code, breach of contract, conversion, and money had and received. Landlord filed a counterclaim, also alleging causes of action for violation of the Texas Property Code and breach of contract. Landlord also alleged a claim for damage to the wooden floor of the home.

The case proceeded to a jury trial. Based on the jury's findings, the trial court's judgment awarded $11,400 in damages to Landlord, plus attorney's fees and interest. The judgment ordered that Tenant take nothing on her claims. This appeal followed.

## ISSUES

In four issues, Tenant challenges the legal and factual sufficiency of the evi-

dence to support the jury's answers on the parties' breach of contract and statutory claims. She also contends that the jury's answers are in irreconcilable conflict.

## STANDARDS OF REVIEW

In reviewing a jury's verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a "scintilla of evidence" is legally sufficient to support the jury's finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994).

In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding and will set aside the verdict only if the evidence supporting the jury finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex.App.-Dallas 2008, pet. denied). In making this review this Court is not a fact finder, and we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Tex. Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied).

When determining whether jury findings irreconcilably conflict, appellate courts apply a de novo standard of review. *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 314 (Tex.App.-Dal-las 2004, pet. denied). In reviewing jury findings for conflict, the threshold question is whether those findings address the same material fact. *Bender*, 600 S.W.2d at 260; *Miles*, 141 S.W.3d at 314. We may not strike down jury answers on the basis of conflict if there is any reasonable basis on which they can be reconciled. *Bender*, 600 S.W.2d at 260; *Miles*, 141 S.W.3d at 314. We must reconcile apparent conflicts in the jury's findings if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Bender*, 600 S.W.2d at 260; *Miles*, 141 S.W.3d at 314–15. We do not determine whether the findings may be reasonably viewed as conflicting; to the contrary, the question is whether there is any reasonable basis upon which the findings can be reconciled. *Bender*, 600 S.W.2d at 260; *Miles*, 141 S.W.3d at 315. However, if one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. *Miles*, 141 S.W.3d at 315. If we determine that a fatal conflict exists, we must remand to the trial court for a new trial. *Id.* The general rule is that a complaint regarding conflicting jury findings is waived if a party does not object before the jury is discharged. *See, e.g., Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.*, 273 S.W.3d 905, 918 (Tex.App.-Dallas 2008, pet. denied).

## DISCUSSION

### A. Breach of Contract

In their operative pleadings, each party claimed the other had breached the lease. The jury answered all of the questions arising out of these claims in Landlord's favor. The jury found that Landlord did not fail to comply with a material obligation of the lease (Question 1). Questions

2 through 4 depended on an affirmative answer to Question 1, and therefore the jury did not answer them. The jury found that Tenant failed to comply with a material obligation of the lease (Question 5); that her failure to comply was not excused (Question 6); that Landlord did not waive the right to enforce the lease (Question 7); and that damages of $5,460 would fairy and reasonably compensate Landlord for her damages that resulted from Tenant's breach.

Tenant's second, third, and fourth issues address the jury's breach of contract findings. In her second issue, Tenant complains that the jury's answers irreconcilably conflict because the jury "awarded [Tenant] damages for breach of contract as an offset to damages awarded to [Landlord] for breach of contract without assigning liability for breach of contract on [Tenant's] claims against [Landlord]." Tenant's reasoning is as follows: the jury found Landlord did not breach the lease. On the other hand, the jury awarded Landlord only $5,460 for Tenant's breach of contract, even though Landlord claimed that Tenant owed $6,300. The $840 difference is exactly the amount of money Tenant demanded from Landlord for repairing the spa and the air conditioning at the home. Therefore, the jury "awarded damages" to Tenant from Landlord by reducing the award to Landlord by the amount of $840, even though the jury also found that Landlord was not liable on the breach of contract claim.[1]

◼ As we have noted, we may not strike down jury answers on the basis of conflict if there is any reasonable basis on which they can be reconciled. *Bender*, 600 S.W.2d at 260; *Miles*, 141 S.W.3d at 314. And as a general rule, the jury has broad discretion to award damages within the range of evidence presented at trial, as long as a rational basis exists for its calculation. *Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex.App.-Austin 1997, writ denied). The jury's findings will not be disregarded merely because its reasoning in arriving at its figures may be unclear. *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied). The fact that there is nothing in the record to evidence how the jury arrived at a specific amount is not necessarily fatal to the verdict. *Mayberry*, 948 S.W.2d at 317. Instead, when the evidence supports a range of awards, as opposed to two distinct options, an award of damages within that range may be an appropriate exercise of the jury's discretion. *Id.*; *see also Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 760 (Tex.App.-Dallas 2008, no pet.).

◼ Tenant contends there was no "range of evidence" presented at trial. She argues that Landlord sought only the rent, and the jury was instructed to consider only the rent. The instruction to the jury, however, was to consider "[d]amages in the form of rental payments and late payments that should have been paid" by Tenant, if any. The $6,300 which is the fixed amount Tenant asserts was the only amount the jury could award included $1,500 in late fees and charges in addition to $4,800 for the July 2005 rent payment, according to the evidence presented at trial. In addition, Tenant testified that she moved out of the home before the end of July, and felt that she should not be obligated to pay rent for the days that she did not reside there, and for the days that her tenancy was interrupted. The jury could

---

1. Paradoxically, the logical conclusion to Tenant's argument is that the jury did not award Landlord enough damages on her breach of contract claim, because the jury deducted the $840 without a finding that Landlord was liable for it.

have reduced the award to Landlord by some amount in response to Tenant's testimony, or awarded some of the late charges and interest, but not all. The jury's answer of $5,460 was within a range supported by the evidence. *Mayberry*, 948 S.W.2d at 317. The jury's answers finding that Landlord did not breach the contract are consistent with the award of $5,460 in damages to her. We overrule Tenant's second issue.

In her third issue, Tenant contends that the jury's answers regarding Landlord's breach of contract claim are not supported by sufficient evidence. Tenant argues that the evidence was undisputed that Landlord "has at all times, and still, retains possession of the entire $5,800 security deposit." Because this evidence was undisputed, Tenant contends that there was no evidence or insufficient evidence to support the jury's finding of damages on Landlord's breach of contract claim. We agree that there is no dispute that Landlord did not refund the security deposit. Landlord pleaded and established at trial, however, that under the provisions of the lease, she was not obligated to refund the deposit, and also could have made deductions from the deposit for certain "reasonable charges." Again, there was a range of evidence presented. There was undisputed evidence that Tenant did not pay the July rent. There was evidence of late charges incurred. There was evidence of repair costs incurred by Landlord for damages to the wood floor of the home and cleaning resulting from Tenant's tenancy. There was evidence that Tenant did not give Landlord thirty days written notice of surrender of the premises, which was required under the lease before Landlord was obligated to return the deposit. Under Landlord's breach of contract claim, the jury was not required to deduct the amount of the se-

curity deposit from any amount of damages awarded to Landlord. There was sufficient evidence from which the jury could have determined that the amount of $5,460 would "fairly and reasonably compensate [Landlord] for her damages," as the jury was instructed. We conclude the evidence is legally and factually sufficient to support the jury's award of damages for breach of contract. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450 (anything more than a scintilla of evidence is legally sufficient to support jury's finding); *Cain*, 709 S.W.2d at 176 (jury's verdict set aside only if evidence supporting jury's finding is so contrary to overwhelming weight of evidence as to be clearly wrong and unjust). We overrule Tenant's third issue as it relates to the breach of contract claim. We will address the issue as it relates to the statutory claims in our discussion below.

In her fourth issue, Tenant contends the evidence established as a matter of law that Landlord breached the contract first so as to relieve Tenant from her contractual obligations. In the alternative, Tenant asserts the jury's failure to find that Landlord breached the contract first is against the great weight and preponderance of the evidence. Tenant bore the burden of proving Landlord's prior breach. Tenant presents a chart of the provisions of the lease she contends were breached by Landlord, and cites to evidence adduced at trial for each. Tenant's arguments primarily relate to the marketing and sale of the home prior to the end of the lease term, and Landlord's failure to pay for repairs to the spa and air conditioning.

While there was little or no dispute that the house was sold prior to the end of the lease term, and Tenant moved out of the home in July, the parties offered conflicting evidence on the surrounding circum-

stances. Landlord testified she called Tenant around the time that Tenant was required to exercise the option to renew the lease or purchase the home. Landlord testified Tenant was not interested in either option. Landlord testified she asked if Tenant would be willing for Landlord to put the home on the market before the end of the lease term. She testified Tenant agreed. Landlord testified that she received an offer on the house within a week of its being listed for sale. The offer was contingent on the buyers' ability to close on the purchase by the end of July. Landlord testified that she again called Tenant and asked her if she would be willing to move out a month early. Again, Tenant agreed. Landlord testified that she would not have listed the home or closed on the sale had Tenant not given her permission. Landlord denied receiving any complaints from Tenant at all on any matter until after Tenant moved out and demanded the return of her security deposit.

Because Landlord was living in Florida at the time, she engaged a real estate agent, Phyllis Barion, to handle the listing and sale of the home. Landlord asked Barion to meet with Tenant. Barion testified regarding her meeting with Tenant and her husband, and her efforts to comply with Tenant's conditions for showing the home and for the inspection and repairs that followed the sale. As will be discussed in more detail below, Barion's and Tenant's testimony regarding the number, timing, and existence of the interruptions to Tenant's tenancy and the circumstances surrounding the sale of the home were almost completely inconsistent.

Further, Tenant's testimony contradicted Landlord's regarding the two telephone calls Landlord described. Tenant did admit Landlord called her to ask whether she was interested in exercising the options under the lease, and further admitted she told Landlord she was not. She also admitted she agreed to allow Landlord to list the house for sale and show it. But she testified that by the time of the second telephone call, there were realtors, repair persons, and other strangers in the home every day, all day, contrary to her instructions. She testified that her reason for agreeing to move out of the home early was the constant flow of strangers in the home that she was expected to watch and accommodate. Tenant testified that inspectors and repair persons were in the home causing interruption prior to the second telephone call from Landlord. This was in direct conflict with Landlord's testimony that the contract for sale was not signed until after the second conversation with Tenant, and Landlord's and Barion's testimony that no inspection or repair work would have been done before a contract for sale was signed.

These factual matters were for the jury to resolve in determining whether Landlord breached the lease prior to Tenant's breach, and if so, whether the breach was material. *See Cameron,* 24 S.W.3d at 392 (court of appeals will not pass on credibility of witnesses or substitute its judgment for that of trier of fact, even if different answer could be reached on review of evidence). We conclude the evidence is legally and factually sufficient to support the jury's answers regarding Landlord's prior breach of the contract. *See Cont'l Coffee Prods. Co.,* 937 S.W.2d at 450 (legal sufficiency standard); *Cain,* 709 S.W.2d at 176 (factual sufficiency standard). We decide Tenant's fourth issue against her.

### B. Statutory Claims

Tenant's first and third issues address the parties' statutory claims. These claims are governed by subchapter C of Chapter 92, Texas Property Code, regarding security deposits in connection with

residential tenancies. *See* TEX. PROP.CODE ANN. §§ 92.101–92.109 (West 2007). Under subchapter C, a landlord is required to refund a security deposit to a tenant within 30 days of the tenant surrendering the premises. TEX. PROP.CODE ANN. § 92.103(a). A tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent. TEX. PROP. CODE ANN. § 92.108(a). If the landlord or the tenant violates these provisions in bad faith, the statute provides a remedy in the amount of three times the deposit or payment wrongfully withheld, plus attorney's fees. *See* TEX. PROP.CODE ANN. § 92.108(b) (tenant's violation); § 92.109(a) (landlord's violation; also requires payment of an additional $100). For both the landlord and the tenant, a presumption of bad faith arises upon a violation of the applicable section. *See* TEX. PROP.CODE ANN. § 92.108(b) ("A tenant who violates this section is presumed to have acted in bad faith."); TEX. PROP.CODE ANN. § 92.109(d) (landlord who fails to return security deposit or provide written description or itemization of deductions within 30 days of the tenant's surrender of possession is "presumed to have acted in bad faith").

In *Pulley v. Milberger,* 198 S.W.3d 418, 428 (Tex.App.-Dallas 2006, pet. denied), we noted that to defeat the statutory presumption of bad faith in section 92.109(d), the "landlord must prove his good faith, i.e., honesty in fact in the conduct or transaction concerned." Similarly, to overcome the statutory presumption of bad faith in section 92.108(b), the tenant must prove her good faith and "honesty in fact in the conduct or transaction concerned." *See id.* We have also explained that "bad faith" in the context of the statute "implies an intention to deprive the tenant of the refund lawfully due." *A.B. Inv. Corp. v. Dorman,* 604 S.W.2d 506, 508 (Tex.Civ.App.-Dallas 1980, no writ). "[M]ere intentional retention of the deposit by the landlord beyond the thirty day statutory period does not establish the landlord's dishonest intent to deprive the tenant of the deposit although the burden of proof is upon the landlord to overcome the presumption of bad faith by showing his good faith." *Id.* Here, both parties testified as to their actions and intentions. We conclude there was legally and factually sufficient evidence to support the jury's findings that Tenant acted in bad faith but Landlord did not.

The jury made findings as to both the landlord and the tenant. Questions 9, 10, and 11 were related to Tenant's statutory claims, and addressed whether Landlord failed to refund Tenant's security deposit. The jury found that Landlord failed to refund a portion of the security deposit (Question 9), in the amount of $1,000 (Question 10), but did not find that Landlord failed to refund the deposit in bad faith (Question 11). Questions 12 through 14, related to Landlord's statutory claims, addressed whether Tenant withheld "any portion of the last month's rent on the grounds that the security deposit she paid was security for unpaid rent." The jury answered "yes," (Question 12) and found that Tenant withheld $4,800 (Question 13). The jury found Tenant withheld the $4,800 in bad faith (Question 14).

In sum, on the competing statutory claims, the jury found violations by both Tenant and Landlord, but found that only Tenant's violation was in bad faith. The jury found that the amount connected with Tenant's violation was $4,800, and the amount connected with Landlord's violation was $1,000. The trial court's judgment awarded Landlord damages arising from Tenant's statutory violation.

In her first and third issues, Tenant challenges the sufficiency of the evidence

to support the jury's findings that she acted in bad faith but Landlord did not. In her third issue, Tenant also challenges the jury's award of damages to Landlord because it was undisputed that Landlord retained the security deposit.

■ We first review the evidence relevant to Landlord's claim under the statute. The evidence was uncontroverted that Tenant did not pay the last month's rent under the lease. Tenant's own testimony provided evidence from which the jury could have found that Tenant withheld the last month's rent on grounds that the security deposit was security for unpaid rent. *See* TEX. PROP.CODE ANN. § 92.108(a). Tenant testified:

> Q: So there's no doubt then–let's make sure. There's no doubt then that the fact that you were aware that Lisa [Landlord] was keeping your security deposit of $5800 was a component, one reason that you weren't paying July's rent. That's correct?
>
> A: Well, I knew she had my deposit.
>
> Q: And that was one of the reasons you didn't pay July rent?
>
> A: Correct.

Later, Tenant also testified:

> Q: Okay, So you didn't pay July rent because she was keeping your deposit but you wanted your deposit back. Is that your testimony?
>
> A: Correct.

This evidence would also support a presumption that the statutory violation was in bad faith. *See* TEX. PROP.CODE ANN. § 92.108(b). Tenant argues, however, that the presumption of bad faith is rebuttable, and she presented sufficient evidence to overcome the presumption. Tenant testified to "constant interruptions of showings and inspections" that interfered with her enjoyment of the home. She also testified that she felt Landlord was taking advantage of her. She testified that "[p]eople were all over my house, inside and out, all day, all night." She testified she had "no enjoyment of the house at all," and she told Landlord she would leave because "I was so disturbed, I wanted to leave." She testified that she did not leave the home before the end of the lease term because she was reconciling with her husband; she agreed to leave early because of the constant interruptions. She testified that it was "absolutely false" that there were no repairs being made on the house until July 12. She admitted that she did not make any complaints to Landlord. She testified that she did complain to Barion, but Barion did nothing. She testified that after she moved out, she met Barion at the home to return the key, but they did not go inside, and Barion did not show her any gouge in the wood flooring. She testified that she did not pay the July rent because "I thought it was ridiculous." She stated, "I had no enjoyment of the house at all." She testified that it would not "have been a stretch" to pay the July rent if she had quiet use and enjoyment of the house. After she moved out, she demanded the return of the security deposit by letter dated August 3, 2005.

On many of these points, however, there was conflicting testimony. Barion testified to the sequence of events regarding the marketing and sale of the home. According to Barion, she met with Tenant and her husband on June 19; the home was listed on June 21; she received an offer on June 26; and a contract was signed with the buyers on June 27. The inspection took place on July 1, and work in response to the inspection began on July 12. No prospective buyers, realtors, inspectors, or workmen would have been in the home between June 27 and July 1, and between July 1 and July 12. On July 18 and 19, Barion was at the home with workmen.

Tenant was packing up to move out. Tenant asked Barion not to bring workers in or come to the home for a few days to allow her to finish packing and moving. Barion complied with the request, and did not return to the home until July 22. The house was vacated and Tenant was not there. On July 26, she and Tenant met at the home so that Tenant could return the key. Barion testified that they went into the home and discussed the damage to the wood floor.

If believed by the jury, both Landlord's and Barion's testimony directly conflicted with the Tenant's testimony about the events surrounding Tenant's failure to pay the July rent and her reasons for withholding it. The jury could have rejected Tenant's testimony regarding her reasons for failing to pay the July rent and determined that Tenant intended to deprive Landlord of an amount lawfully due under the lease. *See Dorman,* 604 S.W.2d at 508.

▆ Regarding Landlord's bad faith, a presumption that she acted in bad faith arose when she did not return Tenant's security deposit. *See* Tex. Prop.Code Ann. § 92.109(d). Under Chapter 92, Landlord bore "the burden of proving that the retention of any portion of the security deposit was reasonable." Tex. Prop.Code Ann. § 92.109(c). Landlord offered evidence to rebut the presumption and to prove that her retention of the security deposit was reasonable. As described above, she testified to her two conversations with Tenant, to obtain Tenant's agreement to market the home and then to end the lease a month early. Landlord testified she would not have signed the contract with the purchasers had Tenant wished to stay in the home until the end of the lease term.

Q. Did you ever, before you signed the contract giving possession to the Mays on July 27th, ever call [Ten-

ant] and ask her if the 27th was convenient for her?

A. Yes, absolutely. I didn't even sign the contract until I had her agreement. I would never even think of it. She had a lease.

Later, she testified:

Okay. When this offer was made to me, it—the prospects, they did want to close at the end of July. So before I signed that contract I called Brigitte [Tenant] to ask her if that would be okay. I told my agent, in fact, it's up to Brigitte. She—I mean, she has a lease. If she said, no, I want to stay through the end of the lease, that's what would have happened; but she said I'd be happy to move out a month earlier—a month early—in fact, even earlier if you want me to. And I said that's not necessary. So it wasn't until then that I signed the contract, and I would not have signed a contract.

Landlord testified that after Tenant moved out, she had no intention of asking Tenant for the July rent, even though she "thought it was very strange" that Tenant had not paid. She did not plan to contact Tenant about it:

You know, I—I thought we had a fairly good relationship and rapport and we had a couple of great conversations. It was—nothing was like that. And I knew I had her deposit and so I just thought, well, you know, I have her deposit. I'll wait, you know. So I'm not going to demand this rent because I have her deposit. And at the end of—when I did these repairs, it ended up that the deposit would have been more that the repairs anyway; and I thought, well, I'll just eat it and go on. That's really what I thought.

Landlord also testified that she received no complaints from Tenant about interrup-

tions that occurred in the process of listing and selling the home; the first time she was aware of any problem was when she received the demand letter from Tenant's husband in August. After that, she demanded the rent, and when sued by Tenant, she filed a counterclaim for the rent "to protect myself." She had never been sued before and would never have sued Tenant for the rent absent Tenant's lawsuit against her.

The jury was the sole judge of each witness's credibility, and we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact. *See Cameron,* 24 S.W.3d at 392. There was evidence to support a finding that Landlord acted with honesty in fact in her dealings with Tenant, did not intend to deprive Tenant of the security deposit, and acted reasonably in retaining the deposit. *See Pulley,* 198 S.W.3d at 428; Tex. Prop.Code Ann. § 92.109(c). We conclude there is no irreconcilable conflict in the jury's answers finding bad faith on the part of Tenant but not on the part of Landlord. We further conclude that the evidence is legally and factually sufficient to support the jury's findings on these issues. The relevant evidence rises "to a level that would enable reasonable and fair-minded people to differ in their conclusions," *see Moriel,* 879 S.W.2d at 25, and the jury's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176. We overrule Tenant's first issue.

Tenant raises another complaint in her first issue, and also in her third issue. She contends that the evidence does not support the jury's answers regarding the amount of damages to be awarded to Landlord under the statute. Her complaint is that the jury's award, and the trial court's judgment on the jury's findings, do not grant her a credit for the security deposit that was not returned. She frames some of her argument as an "irreconcilable conflict" in the jury's findings,[2] and some of her argument as a complaint about the sufficiency of the evidence to support the jury's answers. Her argument in essence is that the jury double-counted the rent due, giving Landlord an award of damages for the rent due and also failing to deduct from that award the amount of the security deposit that Landlord undisputedly failed to return.

 As explained in our discussion of the breach of contract claims, under the lease, Landlord could retain the security deposit, or portions of it, under certain enumerated conditions. Therefore, Landlord could be awarded damages for Tenant's breach of contract without credit for the security deposit she retained. Under the statute, the result is the same. Although section 92.103(a) requires refund of a security deposit by the landlord on or before the 30th day after the date the tenant surrenders the premises, the statute permits the landlord to make deductions for "damages and charges for which the tenant is legally liable under the lease or as a result of breaching the lease," except for "normal wear and tear." Tex.

---

2. Landlord contends that Tenant failed to preserve the issue of conflict in the jury's findings because Tenant did not object before the jury was discharged. *See, e.g., Beard v. Comm'n for Lawyer Discipline,* 279 S.W.3d 895, 904 (Tex.App.-Dallas 2009, pet. denied) (complaint not preserved for review where party did not raise any contention concerning conflicting jury findings before jury discharged). In response, Tenant argues that her complaint is "the application of the law to the jury's answers," which was raised in her post-trial motions, and therefore preserved. For purposes of this opinion we assume Tenant preserved her complaint.

PROP.CODE ANN. § 92.104(a), (b). If the landlord retains all or part of the deposit, the landlord must provide a written description and itemized list of all deductions, unless the tenant owes rent when she surrenders possession of the premises and there is no controversy concerning the amount of rent owed. TEX. PROP.CODE ANN. § 92.104(c). In Question 9 of the jury charge, the jury was instructed consistent with these statutory provisions, and Tenant made no objection to the question or the instruction.

In addition, section 92.103(b) permits the landlord to require notice of surrender as a condition for the refund. Subsection (b) provides, "A requirement that a tenant give advance notice of surrender as a condition for refunding the security deposit is effective only if the requirement is underlined or is printed in conspicuous bold print in the lease." Here, paragraph 10(C) of the lease, contained in the record and underlined, requires thirty days written notice of surrender of the premises before the landlord is obligated to refund or account for the security deposit. On cross-examination, Landlord testified that Tenant did not fulfill this condition:

Q. Now, security deposit, $4800. "Refund: Tenant must give landlord at least 30 days' written notice of surrender before landlord is obligated to refund or account for the security deposit." Did Ms. Shamoun ever give you any document in writing that she was terminating the lease?

A. No, she did not.

Q. Did she ever give you a written move-out notice?

A. No, she did not.

Q. And the lease was never modified, correct?

A. It was not modified in written form.

In light of this evidence, the jury was not required to deduct the amount of the security deposit from any award of damages to Landlord. See TEX. PROP.CODE ANN. § 92.103(b) (advance notice of surrender may be condition for refunding security deposit if requirement is underlined or conspicuous in lease).

Tenant argues the evidence supported only one answer to Question 10, that Landlord wrongfully withheld $5,800. Tenant argues that the jury could not have found that Landlord failed to refund only $1000 of the security deposit unless the jury also credited Landlord with $4,800 of unpaid rent. Tenant argues that the jury could not credit Landlord with $4,800 in unpaid rent because section 92.102 of the Property Code provides that a "security deposit is any advance of money, *other than* ... an advance payment of rent." *See* TEX. PROP. CODE ANN. § 92.102 (West 2007) (emphasis added). Tenant also argues that the jury could have answered $1,000 in response to Question 10 only if it "necessarily characterized the $4,800 as unpaid rent," causing an "irreconcilable conflict" with the jury's answer to Question 13 that Tenant withheld rent in the amount of $4,800. Tenant argues further that the jury, having already accounted for the unpaid rent in the answer to Question 10, could find nothing but "zero" in response to Question 13. If the correct answer to Question 13 was zero, then the correct answer to Question 12, whether Tenant withheld any rent, was "no," so that she had no liability for unpaid rent and was entitled to judgment in her favor. We reject Tenant's arguments.

■ The threshold question in reviewing jury findings for fatal conflict is "whether the findings are about the same material fact." *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 275 (Tex.2012) (per curiam). We do not agree that the jury's answers to Questions 10 and 13 "are about the same material fact." *See id.* Question

10 inquired about the amount of the security deposit Landlord withheld, and Question 13 inquired about the amount of rent Tenant withheld. The jury was given different instructions to apply in determining the answer to each question. For its answer to Questions 9 and 10, the jury was instructed regarding deductions a landlord could make before refunding a security deposit. As discussed above, there was evidence introduced at trial relevant to this determination. There was other evidence, separate and apart from the evidence regarding the security deposit, introduced at trial relevant to the amount of rent withheld by Tenant that was the subject of Questions 12 and 13. The jury was instructed to resolve two separate issues of fact in light of the evidence presented on each issue at trial.

The jury's answers to each question are supported by evidence, and may be reconciled by concluding that the jury was following the trial court's instructions to determine separate questions of Landlord's liability to Tenant, and Tenant's liability to Landlord. We cannot conclude the jury "necessarily characterized" an amount as unpaid rent and then improperly deducted that amount to arrive at its answer to Question 10, where the jury's answer could also have been the result of properly following the trial court's instructions. *See Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982) (appellate court must assume that jury properly followed trial court's instructions). We do not presume a jury's answers conflict when there is a reasonable basis on which they may be reconciled. *See Bender*, 600 S.W.2d at 260; *Miles*, 141 S.W.3d at 314. In addition, there is more than a scintilla of evidence to support the jury's answers to Questions 10 and 13, and the jury's findings on those issues are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and

unjust. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450 (legal sufficiency standard); *Moriel*, 879 S.W.2d at 25 (factual sufficiency standard). We overrule Tenant's complaints in her first and third issues of irreconcilable conflict in the jury's answers regarding the parties' competing statutory claims and the sufficiency of the evidence to support the jury's answer's to Questions 10 and 13.

## C. Modification of Judgment

In her first and third issues, Tenant also complains that in the judgment, the trial court incorrectly applied the law to the jury's findings. While we agree that the judgment did not properly calculate the damages awarded for the Landlord's statutory claims, the error was in Tenant's favor.

■ The lease itself, on which both parties relied, showed that the amount of the monthly rent was $4,800, and the jury found that $4,800 was the amount of rent withheld by Tenant in bad faith. Therefore, under section 92.108(b), the amount of damages to be awarded Landlord for Tenant's violation would be "three times the rent wrongfully withheld," or $14,400, plus attorney's fees. The trial court, however, awarded only $11,400, plus attorney's fees, to Landlord. The jury found that Landlord had withheld the $1,000 pet deposit in violation of the statute. The trial court apparently subtracted the pet deposit from the rent due, arriving at a figure of $3,800, which was then trebled to reach the $11,400 awarded in the judgment. This calculation had the effect of trebling Landlord's withholding of the $1,000 pet deposit, even though the jury found Landlord did not act in bad faith. *See* Tex. Prop. Code Ann. § 92.109(a) (landlord "who in bad faith" retains a security deposit is liable for three times the portion of the

deposit wrongfully withheld). While the trial court correctly attempted to credit Tenant with the jury's finding against Landlord regarding the pet deposit, only $1,000 should have been credited. Giving effect to this credit would result in a judgment of $13,400 to Landlord. We have authority to modify incorrect judgments when the necessary information is available to do so. *Mullins v. Mullins*, 202 S.W.3d 869, 878–79 (Tex.App.-Dallas 2006, pet. denied).

Tenant argues the trial court was required to deduct an additional $4,800 from the damages awarded to Landlord in the judgment in order to give credit for the remainder of the security deposit. As we have discussed, the amount of damages to Tenant arising from Landlord's withholding of the security deposit was a question of fact for the jury. The trial court's judgment credited Tenant with the jury's answer of $1,000. No further deduction was required. We modify the trial court's judgment to reflect an award of $13,400 to Landlord rather than $11,400, and otherwise overrule Tenant's complaints regarding the trial court's calculation of damages in the judgment.

D. Attorney's Fees

Finally, we reject Landlord's "cross issues/cross points" arguing that the trial court's judgment did not award Landlord attorney's fees in accordance with the parties' stipulation. Landlord argues that the parties stipulated to an award of attorney's fees of $15,000 in the event of an appeal to this Court, but the judgment awarded only $10,000. We conclude that Landlord has not preserved this issue for review because she did not call the trial court's attention to the specific error alleged. *See* Tex.R.App. P. 33.1 (appellate complaint must have been made to trial court); *Hall v. Hubco, Inc.*, 292 S.W.3d 22,

33 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). In her motion for judgment, Landlord herself proposed the amount of $10,000 in the event of an appeal to this Court. The trial court's judgment is consistent with this request. Moreover, the trial court was not bound by the parties' stipulation. *Hall*, 292 S.W.3d at 33. A stipulation is some evidence of the reasonableness of requested attorneys' fees, but a trial court may award less than requested even if the evidence is uncontroverted. *Id.* We will not disturb a trial court's award of attorney's fees absent an abuse of discretion. *Id.; see also Ackerman v. Little*, 679 S.W.2d 70, 75 (Tex.App.-Dallas 1984, no writ) (although court of appeals may suggest remittitur of excessive attorney's fees, court of appeals is not authorized to increase the trial court's allowance of attorney's fees). We decide Landlord's "cross issue" against her.

CONCLUSION

Under Texas Rule of Appellate Procedure 43.2(b), we may modify the trial court's judgment and affirm it as modified. Finding no reversible error other than the calculation of damages in the judgment, we modify the trial court's judgment to reflect an award of damages to Landlord in the amount of $13,400, rather than $11,400. In all other respects, we affirm the trial court's judgment.