# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00608-CV

**Linda S. Nowlin, Appellant**

**v.**

**Lori Keaton, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-14-006938, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Linda S. Nowlin, a landlord, appeals from the county court's judgment in a trial de novo review of the justice court's judgment in a forcible-detainer action. After a jury trial, the county court rendered a take-nothing judgment against Nowlin and in favor of Lori Keaton, Nowlin's tenant. Because Keaton has vacated the premises, there is no longer a controversy regarding possession of the property. Nowlin, however, raises issues on appeal related to her claims for unpaid rent and attorney's fees that still present a live controversy. Without addressing moot issues, we will affirm the judgment.

## BACKGROUND

In May 2014, Nowlin purchased the property that Keaton had been residing in and renting from the previous owner since October 2011.[1] Nowlin testified that a condition of her closing on the property was that Keaton remain as tenant. Nowlin and Keaton entered into a lease contract for Keaton's rental of the property that became effective May 6, 2014, when Nowlin's purchase transaction closed.

The lease provided that Keaton would pay $2,100 per month for rent "in advance and without demand at [Nowlin's] acct at Wells Fargo Bank and payable to [Nowlin]." The lease further provided:

> *Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute.* . . . . If you don't pay all rent on or before the 3rd day of the month, you'll pay an initial late charge of $50 plus a daily late charge of $25 per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. We will not impose late charges until at least the third day of the month. . . . . If you don't pay rent on time, you'll be in default and all remedies under state law and this Lease Contract will be authorized.

Before Nowlin closed on the property, Keaton had been displaced from the residence for a week for mold remediation. Keaton testified that there had been 18 visits to the house by various inspectors and repairmen between March 24, when Nowlin first viewed the property, and

---

[1] The parties are familiar with the background of this case, its procedural history, and the evidence adduced at trial, so we provide only a general overview here. We will provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

May 6, when Nowlin closed on the property. After Nowlin purchased the property, the repair visits continued for various problems identified in the inspection report Nowlin received in connection with the purchase. On May 19, Keaton wrote to Nowlin complaining that "the frequency of the visits and intrusions [was] becoming excessive" and requesting that Nowlin only make repairs that "may compromise the integrity of the property or compromise [Keaton's] family's safety and/or security" while Keaton was leasing from her. On May 27, when Nowlin arrived with a repairman after giving notice to Keaton the previous day that she would be there, she called Keaton to let her know they were at the door. Keaton told her to come in, but Nowlin had not brought her key so she asked Keaton to let them in. Keaton agreed but warned Nowlin that she was undressed. Keaton unlocked the door without putting clothes on and was visible to Nowlin through the window.

Keaton's first full month's rent payment due to Nowlin was the payment for June 2014. Keaton paid her rent for June on June 3. On June 3, Nowlin e-mailed Keaton to remind her of the lease terms requiring rent to be paid on or before the first day of the month with no grace period and with late charges incurred when rent is not paid on or before the third day of the month.

On June 4, Nowlin gave Keaton a notice to vacate for breach of lease. The notice to vacate and Nowlin's eviction suit, which was filed on June 6 in the justice court, both asserted that Keaton had breached the lease contract by violating paragraph 20, which prohibits a tenant from "disturbing or threatening the rights, comfort, health, safety, or convenience of others (including [the landlord's] agents and employees) in or near the dwelling [and from] disrupting [the landlord's] business operations." The eviction suit did not allege that Keaton had failed to pay rent or to pay rent in a timely manner. Although her eviction petition was not based on any allegation of unpaid

3

rent, Nowlin sought "all rents accruing through the date of judgment plus all rents and reletting fees according to lease dated 5/1/14," in addition to court costs and attorney's fees.

The case was heard in the justice court on July 2, 2014. It is undisputed that Keaton had not paid her July rent as of the July 2 hearing in the justice court and that Nowlin had served her with a second eviction notice based on unpaid rent on that date. It is also undisputed that on July 2 after the justice-court trial, which Nowlin lost, Nowlin notified her bank not to accept money from Keaton to prevent Keaton from depositing her rent into Nowlin's account, which was the method of payment required by the lease. Nowlin appealed to the county court at law from the justice court's take-nothing judgment against her that Keaton was entitled to continued possession of the property.

The de novo appeal was heard in the county court at law on August 25, 2014. After the jury trial and a subsequent hearing on post-verdict motions, the county court signed a take-nothing judgment against Nowlin. This appeal followed.

## ANALYSIS

Nowlin contends that the county court erred by refusing to submit her proposed jury questions, that the jury verdict was unsupported by the evidence, and that the presiding judge was biased against Nowlin. Keaton asserts that Nowlin's appeal is moot because Keaton vacated the property after the conclusion of the trial in county court.

### Mootness

We turn first to the threshold issue of our jurisdiction to consider this appeal. Keaton contends that the appeal is moot because she no longer asserts "a potentially meritorious claim of

4

right to current, actual possession" of the property. *See Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006). The only issue in a forcible-detainer action is the right to actual possession of the premises. *Id.* at 785-86; *see also* Tex. R. Civ. P. 510.3(e); Tex. Prop. Code § 24.002. When the tenant no longer has a basis for claiming a right to possession, there is no live controversy between the parties as to the right of current possession, and the issue of possession is moot. *See Marshall*, 198 S.W.3d at 787 (holding possession issue moot as of date tenant's lease expired). In this case, Keaton has voluntarily relinquished the right to possession that she was awarded by the county court at law.[2] We conclude that Keaton has demonstrated that no live controversy exists related to the issue of possession.

Nowlin argues that even if the issue of possession is moot, this case differs from *Marshall*. She contends that the appeal is not moot because the Property Code and the Texas Rules of Civil Procedure entitle her to recover damages, including unpaid rent and attorney's fees, and consequently, a live controversy remains regarding these issues. *See id.* at 788 (holding that evicted tenant's claim for fair-market value of lost leasehold value did not present controversy preventing dismissal of case because claim did not present grounds for recovery within forcible-detainer case). Nowlin relies on Property Code Sections 24.0051 and 24.006 and Texas Rule of Civil Procedure 510.11 to support her argument that she is entitled to recover unpaid rent and attorney's fees. *See* Tex. Prop. Code §§ 24.0051 (establishing procedures applicable to suit filed in justice court seeking eviction based on unpaid rent), 24.006 (providing that prevailing landlord is entitled to recover

---

[2] In addition, we note that the lease contract expired on April 30, 2015, shortly before this opinion was issued. *See Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006).

5

attorney's fees from tenant if written lease allows fee recovery); Tex. R. Civ. P. 510.11 (authorizing prevailing party in forcible-detainer suit to recover "damages, if any, suffered for withholding or defending possession of the premises during the pendency of the appeal" from justice court to county court, including "loss of rentals during the pendency of the appeal and attorney fees in the justice and county courts").

In this case, the unpaid-rent portion of the case is not moot to the extent Nowlin asserts that she should have been awarded unpaid rent for July and August during the pendency of her appeal to county court. Consequently, we will consider whether Nowlin is entitled to unpaid rent under the lease under Property Code Section 24.0051 and attorney's fees under Property Code Section 24.006 because we cannot consider whether she should have been determined to be a prevailing party entitled to damages under Rule 510.11 without addressing the moot issues related to possession. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229-30 (Tex. 1993) (holding that when party's claims for declaratory and injunctive relief were rendered moot, party who lost on those claims in trial court could "never be a prevailing party" even on retrial, and thus claim for prevailing-party attorney's fees and costs did not prevent case from being moot).

Accordingly, we will address the issues raised by Nowlin concerning her asserted entitlement to the July and August rent without addressing moot issues regarding Nowlin's alleged right to immediate possession. Nowlin asserts that (1) the trial court erred by not including her proposed charge questions related to the July and August rent, (2) the evidence does not support the jury's answer to the question that was included about rent, and (3) the trial court exhibited bias against Nowlin that entitles her to a new trial.

6

**Jury charge**

The jury charge consisted of three questions, which the jury unanimously answered as follows:

## Question 1:

Did Lori Keaton unreasonably refuse to allow Linda Nowlin or her repairers . . . to enter the house peacefully for the purpose of making repairs, estimating repair or refurbishing costs, or doing preventive maintenance?

Answer "Yes" or No."

Answer: No.

## Question 2:

Did Lori Keaton fail to comply with the lease by failing to pay her rent in a timely manner?

A failure to comply must be material. The circumstances to consider in determining whether a failure is material include:

1.    The extent to which the injured party will be deprived of the benefit which she reasonably expected;

2.    The extent to which the injured party can be adequately compensated for the part of that benefit of which she will be deprived;

3.    The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4.    The likelihood that the party failing to perform or to offer to perform will cure her failure taking into account the circumstances including any reasonable assurances;

5.    The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

7

Answer: No.

**Question 3:**

What is a reasonable fee for the necessary services of Linda Nowlin's attorney for preparation and trial in this case, stated in dollars and cents?

Answer: $2300.00.

Nowlin asserts that the trial court erred by refusing to submit her proposed charge questions concerning whether Keaton was in arrears on her rent payments for July and August and concerning the lease's provisions regarding the timing of rent payments. Nowlin tendered her proposed questions at a pretrial charge conference, and she asserts that the trial court orally rejected her proposed questions at the pretrial conference but never issued a written ruling on the questions. Nowlin argues that she "reasonably believed that the court had already ruled on her proposed questions and rejected them," and therefore, she did not make another submission of her questions after the court prepared the charge and submitted it to the parties. At the formal charge conference, when the trial court asked if Nowlin had objections or requests concerning the charge, Nowlin raised only one objection. Nowlin objected that question number 3 should include certain dollar amounts related to her attorney's fees. The trial court overruled the objection, and Nowlin made no other charge objections or requests.

To preserve error in the charge, the court must be informed of the error before the charge is formally submitted to the jury. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 830 (Tex. 2012) (citing Tex. R. Civ. P. 272). "A charge filed before trial begins rarely accounts fully for the inevitable developments during trial. For these reasons, our procedural rules require that

8

requests be prepared and presented to the court 'within a reasonable time *after* the charge is given to the parties or their attorneys for examination.'" *Id.* (quoting Tex. R. Civ. P. 273). Although in some instances courts have held that a party may rely on a pretrial charge when the record shows that the trial court knew of the written request and refused to submit it, *see Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 452 (Tex. 1995) (per curiam), we cannot expect trial courts "to comb through the parties' pretrial filings to ensure that the resulting document comports precisely with their requests—that is the parties' responsibility," *Cruz*, 364 S.W.3d at 831. We cannot determine on this record that the trial court refused to submit Nowlin's proposed questions when nothing in the record shows that the trial court was made aware after the close of evidence that Nowlin intended to request the same questions that she had submitted pretrial. There was no discussion on the record of the issues Nowlin now raises and no objection to the question on rent ultimately submitted to the jury. We conclude that Nowlin did not sufficiently alert the trial court to her requests and therefore did not preserve this issue for appellate review. *See id.*

**Evidence sufficiency**

Nowlin challenges the legal and factual sufficiency of the evidence supporting the jury's answer to the question of whether Keaton failed to comply with the lease in a material way by failing to pay her rent in a timely manner. The essence of Nowlin's live complaint on appeal is that Keaton breached the lease by failing to timely pay her July rent, and therefore, Nowlin is entitled to the unpaid July and August rent under the Property Code.

Nowlin contends that the jury should have found as a matter of law that Keaton failed to timely pay her July rent. A party attacking an adverse finding on an issue upon which she had the

9

burden of proof at trial must assert that the evidence establishes as a matter of law all vital facts supporting the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When reviewing the jury's verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and we disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the entire record to determine if the contrary proposition is established as a matter of law only if there is no evidence to support the jury's finding. *Dow Chem. Co.*, 46 S.W.3d at 241. Anything more than a "scintilla of evidence" is legally sufficient to support the jury's finding. *City of Keller*, 168 S.W.3d at 822. To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). The jury is the sole judge of the witnesses' credibility and the weight of their testimony, and we assume that the jury credited testimony favorable to the verdict and disbelieved testimony contrary to it. *City of Keller*, 168 S.W.3d at 819.

Nowlin also argues that the evidence supporting the jury's finding on whether Keaton timely paid her rent is factually insufficient. When a party attacks the factual sufficiency of an adverse finding on an issue on which that party has the burden of proof, that party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. In reviewing such a challenge, we consider and weigh all the evidence and may set aside the verdict only if the evidence is so weak or if the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* When conducting this review, we do not act as a factfinder, and we will not pass upon the credibility

10

of the witnesses or substitute our judgment for the factfinder's judgment. *Shamoun v. Shough*, 377 S.W.3d 63, 68 (Tex. App.—Dallas 2012, pet. denied).

Nowlin testified that after Keaton failed to pay rent on July 1, Nowlin gave her a second eviction notice on July 2 while they were in the courtroom for the justice-court trial, and later that day she placed a hold on her bank account to prevent Keaton from depositing rent. Nowlin acknowledged that depositing rent to her bank account was the only method established by the lease for Keaton to pay rent but stated, "I am not obligated to accept any late rent" under the lease. Keaton testified that she attempted to pay the July rent on July 3 and learned that Nowlin had blocked her bank account to prevent Keaton from depositing rent. Keaton testified that she then sent e-mails to Nowlin on July 4, July 5, and July 7, asking her how to get the rent to her. She testified that Nowlin responded by referring her to the notice to vacate and moving instructions and that she responded to Nowlin by referring her to the judgment. Keaton testified that when Nowlin e-mailed her on July 28 seeking to enter the house, she responded in part by asking Nowlin not to contact her again except to give her instructions on how to get the rent to her.[3]

Nowlin contends that any payment made after the first day of the month amounts to a breach of the lease because the lease requires payment "on or before the 1st day of each month (due date) with no grace period." In addition, the lease provides that if the tenant does not pay rent "on time," the tenant is in default and all remedies under the contract are authorized. Accordingly, Nowlin asserts, Keaton's attempt to pay rent on July 3 was untimely, resulting in a material breach of the lease.

---

[3] The July 28 e-mail was entered into evidence.

11

The evidence reflects that the lease agreement, in addition to the requirement that rent be paid on or before the first day of the month, also allows late payments. The lease agreement provides that if the tenant does not pay rent on or before the third day of the month, the tenant pays an initial late charge of $50 with an additional daily late charge of $25 per day after that date until the rent is paid in full. "In other words, although rent is due no later than the first day of the month, because the lease allows for late payments, payment of rent after the first day of the month does not amount to a breach of the lease." *Pecan Valley Golf Club Apartments v. Moreland*, No. 04-10-00421-CV, 2011 WL 721463, at *2 (Tex. App.—San Antonio Mar. 2, 2011, no pet.) (mem. op.). But even if we were to construe the lease's language stating that a tenant who does not pay rent "on time" is in default to mean that a tenant who does not pay rent on the first day of the month is in breach on the second day of the month, whether such a breach is material is a factual matter for the jury to resolve. *See Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737, 739 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) ("The determination of whether a breach is a material breach of the contract must necessarily turn on the facts of each case.").

The lease also required the rent payments to be made to Nowlin's bank account. The jury apparently believed Keaton's testimony that she tried to pay rent on July 3 and was unable to do so.[4]

---

[4] Moreover, although Nowlin and Keaton offered conflicting testimony about why Keaton did not pay rent on July 1, to the extent this testimony had any bearing on the jury's finding, we will not substitute our judgment for that of the jury's. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Nowlin testified that Keaton told the justice court that she had no intention of paying the July rent because she believed Nowlin was retaliating against her by not performing certain repairs on her door. Keaton testified that she did not attempt to pay rent until July 3 because the justice-court trial was on July 2, and if she was evicted, there was no guarantee

12

The jury's instructions included the factors that they were to consider when determining whether any failure by Keaton to comply with the lease by timely paying rent was material. *See Hernandez v. Gulf Grp. Lloyds,* 875 S.W.2d 691, 693 & n.2 (Tex. 1994) (identifying factors courts consider when determining materiality of breach of contract (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981))). Keaton's testimony that she attempted to pay rent and could not because Nowlin had blocked her from depositing it in the account constitutes more than a scintilla of evidence that Keaton's behavior comported with standards of good faith and fair dealing. *Cf. STR Constructors, Ltd. v. Newman Tile, Inc.*, 395 S.W.3d 383, 388 (Tex. App.—El Paso 2013, no pet.) (concluding contractor's behavior in allowing other subcontractors to walk over and damage newly installed tile failed to comport with standards of good faith and fair dealing and played significant role in creating situation of substandard kitchen that contractor argued justified its termination of contract with subcontractor tile company). Viewing the evidence in the light most favorable to the verdict, we conclude that reasonable and fair-minded jurors could reach the conclusion that even if Keaton's failure to pay rent on July 1 was a breach of the lease contract, her offer to perform on July 3 before a late fee would be charged and her subsequent offers to perform that were refused by Nowlin rendered any breach immaterial. Viewing the evidence in a neutral light, we cannot conclude that the jury's finding that Keaton's failure to pay on July 1 did not amount to a material breach of the lease was clearly wrong and manifestly unjust. We hold the evidence was both legally and factually sufficient to support the jury's finding on question number two. We

_____

she would get her money back. In addition, in Keaton's view, the rent was not due until the third day of each month because late fees were not charged until the fourth day.

overrule Nowlin's issues related to the sufficiency of the evidence supporting the jury's finding about unpaid rent.[5]

**Judicial bias**

Nowlin contends that the presiding judge in the county court exhibited bias and prejudice toward her and her claims that entitles her to a new trial. Nowlin provides thirteen examples of alleged judicial bias. Most of these examples involve the trial judge's either commenting on Nowlin's answers to questions and on her counsel's questions or asking questions of the witnesses himself during the trial.[6] Nowlin also complains of the trial judge's refusal to allow

---

[5] Nowlin also raises issues concerning her entitlement to attorney's fees and court costs. Both the Property Code and Rule 510.11 provide that only a prevailing landlord is entitled to attorney's fees and court costs. We do not reach any of Nowlin's issues related to her entitlement to attorney's fees and court costs because she did not prevail on the issue of possession below and has not prevailed on the issue of unpaid rent here. *See* Tex. R. App. P. 47.1.

[6] Nowlin complains of the following comments made in the jury's presence: (1) the trial judge's questioning her about whether there was a need to go inside Keaton's residence for a termite treatment she had scheduled; (2) his statement that Nowlin appeared to be "looking for trouble where there isn't any" when she said she cancelled the treatment when Keaton refused to allow her to come in because the termite exterminator might have decided he needed to go in once he got there, even though she acknowledged that the inspection report stated the treatment only needed to be applied on the outside; (3) his follow-up question of "You don't remember?" when she said she would have to look when asked whether the tension with Keaton began almost immediately; (4) his statement "Okay. That's the answer. No." after Nowlin said, "I wouldn't say almost immediately" in response to his question; (5) the judge's asking Nowlin if Keaton's asking her to come at a different time for a repair issue on May 7 "is a problem"; (6) the judge's question about whether it had been impossible for Keaton to pay rent after July 2 and his follow-up statement that, "The only way you've given her to pay rent is by depositing it directly into your bank account."; (7) the judge's comment that Nowlin's counsel's line of questioning about whether Keaton had ever had a landlord who walked in without knocking was "a waste of time. There's no evidence that on this occasion she entered without knocking. She called on the cell phone and Ms. Keaton told her to come in."; (8) the judge's follow-up comment "Boy, do I too. But I don't have an objection so I have to let it go on. I just get so sick," which was made after Keaton had answered one of Nowlin's counsel's questions by saying "I think we're beating a dead horse but yes."

14

witnesses to read from documents admitted into evidence. The other five examples involve statements made to counsel outside the presence of the jury.[7] Nowlin contends that the judge's comments outside the jury's presence demonstrate that his comments and questions in the jury's presence improperly reflected his opinion of Nowlin's claims and the weight of the evidence.

We begin by noting that Nowlin has not preserved error on this issue for appellate review. *See Dow Chem. Co.*, 46 S.W.3d at 241. "[O]bjection to a trial court's alleged improper conduct or comment must be made when it occurs if a party is to preserve error for appellate review, unless the conduct or comment cannot be rendered harmless by proper instruction." *Id.* Nowlin does not explain how any comments made by the trial judge were incurable or would excuse Nowlin's failure to preserve error. *See id.*

Nevertheless, we have carefully examined the judge's allegedly improper comments in the context of the entire record, and we conclude there is no evidence of judicial bias. The United States Supreme Court and the Texas Supreme Court have determined that "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* at 240 (quoting *Liteky v. United States*,

---

[7] Three of these examples involve discussions between the court and the parties' counsel about what evidence had been presented in Nowlin's case-in-chief and the issues to which the evidence was related. The other two examples are comments made by the judge related to Nowlin's position about the unpaid rent. First, when discussing whether Nowlin had presented evidence that rent had not been paid on time, the judge commented "I've never seen a landlord who refused to receive rent on the 2nd or the 3rd just like the contract says." Second, during the hearing on post-trial motions, the judge stated "[W]e asked [the jury] if it was a material breach of rent [sic]. Your position is ridiculous. Her position is ridiculous that you have to pay it on the 1st or on the 2nd, I can give you a dismissal notice."

15

510 U.S. 540, 555 (1994)). Therefore, a trial judge's remarks during a trial "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. Expressions of impatience, dissatisfaction, annoyance, and even anger are insufficient to establish bias or partiality. *See Dow Chem. Co.*, 46 S.W.3d at 240 (citing *Liteky*, 510 U.S. at 555-56). "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 556. "Further, a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Dow Chem. Co.*, 46 S.W.3d at 241.

Based on these principles, our review of the record indicates no evidence of judicial bias. Even the judge's most critical remarks at most amount to expressions of impatience or annoyance. As for Nowlin's assertion that the judge improperly acted as an advocate by questioning Nowlin, we note that a judge may put competent and material questions to a witness for the purpose of eliciting evidence that has not otherwise been brought out. *See, e.g.*, *Born v. Virginia City Dance Hall & Saloon*, 857 S.W.2d 951, 957 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("[W]here anything material has been omitted, it is sometimes [the trial judge's] duty to examine a witness."). The judge's questions to Nowlin were reasonable and fact-based, and the judge primarily intervened with questions seeking to clarify Nowlin's testimony. Most of Nowlin's examples involve nothing more than the judge exercising his broad discretion to "maintain control and promote expedition." *Id.* Without substantially more than Nowlin has presented here, the

16

judge's comments and questions do not demonstrate bias. We overrule Nowlin's issue asserting judicial bias.[8]

## CONCLUSION

Having overruled Nowlin's issues that are unrelated to possession of the property and without addressing the propriety of the trial court's judgment regarding possession of the property, we conclude that Nowlin has not demonstrated error requiring reversal of the judgment.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed: June 4, 2015

---

[8] Keaton has filed a motion for sanctions under rule 45 of the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 45 ("If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages."). Whether to grant sanctions for a frivolous appeal is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances. *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We review the record from the advocate's viewpoint and decide whether he had reasonable grounds to believe the judgment could be reversed. *Smith v. Marshall B. Brown, P.C.*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). In this case, although Nowlin's appeal lacks merit, we conclude that it is not frivolous, and we deny Keaton's motion. *See D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 205 (Tex. App.—Dallas 2011, no pet.) (identifying factors tending to indicate that appeal is frivolous).