FORD MOTOR COMPANY, Appellant,

v.

Susan Renae MILES, Individually and as Executor of the Estate of Willie Edward Searcy, Deceased, and Ken Miles, Appellees.

No. 05–03–00977–CV.

Court of Appeals of Texas, Dallas.

July 26, 2004.

Rehearing Overruled Sept. 8, 2004.

William Lawrence Davis, Joseph R. Knight,d Bob E. Shannon, Baker & Botts, Austin, for Appellant.

Christopher S. Ayres, James M. Stanton, R. Jack Ayres, Jr., William E. Hammel, Law Office of R. Jack Ayres, Jr., P.C., Addison, Deborah Jean Bullion, McGlinchey Stafford, LLC, Sugar Land, T. Randall Sandifer, Sandifer Law Office, Allen, for Appellees.

Before Justices WHITTINGTON, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG.

This appeal arises from a personal injury and wrongful death case filed by Susan Renae Miles, individually and as executor of the estate of Willie Edward Searcy, deceased, and Ken Miles (collectively, Miles) against Ford Motor Company. Miles alleged that the seat belt in a Ford-manufactured pickup truck was defective because of a "tension eliminator," causing Miles's and Searcy's injuries in a collision with another vehicle and Searcy's subsequent death. The jury refused to find that a design, manufacturing, or marketing defect caused Miles's injuries or Searcy's death, but found Ford negligent and grossly negligent. The trial court rendered judgment based on the jury's negligence finding and awarded compensatory and punitive damages and prejudgment interest of more than $8 million. For the reasons stated below, we reverse the trial court's judgment in its entirety and remand this case to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Searcy, who was then fourteen years old, was a passenger in a 1988 Ford Ranger pickup truck, driven by Searcy's stepfather, Ken Miles. The truck and another vehicle collided. As a result of the collision, Searcy was rendered a ventilator-dependent quadriplegic and died in 2001. Susan Miles, Searcy's mother, individually and as independent executor of the estate of Willie Searcy, and Ken Miles originally sued Ford and other defendants in Rusk County, asserting liability on the basis of defective product, negligence, and breach of warranties, alleging that a faulty seat belt caused Searcy's injuries. That suit resulted in an award of compensatory and exemplary damages to Miles. On appeal by both sides, the Texarkana Court of Appeals affirmed in part and reversed in part the trial court's judgment. *Miles v. Ford Motor Co.*, 922 S.W.2d 572 (Tex. App.-Texarkana 1996), *aff'd in part & rev'd in part*, 967 S.W.2d 377 (Tex.1998). The supreme court concluded venue was improper in Rusk County and reversed

and remanded the matter for new trial in Dallas County. *Miles,* 967 S.W.2d at 379–80.

In Dallas County, Ford moved for partial summary judgment on all of Miles's claims except design defect. The trial court ordered that Miles take nothing on its claims for malice, gross negligence, and manufacturing defect, and the court limited the scope of the marketing defect claim. Miles severed these claims from the design defect claim and appealed. In an unpublished opinion with one judge dissenting, this Court reversed the partial summary judgment on all claims except malice and remanded the case to the trial court for further proceedings. *Miles v. Ford Motor Co.,* No. 05–99–01258–CV, 2001 WL 727355 (Tex.App.-Dallas 2001, pet. denied) (not designated for publication).

On remand, the case was transferred to probate court for retrial on all of Miles's theories. Miles's petition after remand named only Ford as a defendant. Miles asserted causes of action for strict liability for design, manufacture, and marketing of a defective product, and negligent design, manufacture and marketing of the truck.[1] Specifically, Miles's theory was that the "tension eliminator" in the seat belt Searcy was wearing allowed excessive slack in the shoulder part of the belt, which caused Searcy's injuries.

Four liability questions were submitted to the jury: design defect, manufacturing defect, marketing defect, and negligence. Question 1 inquired whether there was a design defect in the truck at the time it left the possession of Ford that was a producing cause of the injury to or death of Searcy. It defined "design defect" as a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. In order for a design defect to exist, there must have been a safer alternative design. "Safer Alternative Design" means a product design other than the one actually used, that in reasonable probability was economically and technologically feasible at the time the product left the possession of Ford Motor Company.

Question 2 inquired whether there was a manufacturing defect in the truck at the time it left the possession of Ford that was a producing cause of the injury to or death of Searcy. It defined "manufacturing defect" as "a condition of the product that renders it unreasonably dangerous as manufactured."

Question 3 inquired whether there was a marketing defect in the truck at the time it left the possession of Ford that was a producing cause of the injury to or death of Searcy. It included the following definitions:

"Marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known, or by the application of reasonably developed human skill and foresight, should have been known, or the failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions means warnings and instructions given in a form that could reasonably be ex-

---

1. The original petition also named Jermaine Searcy, Willie's brother and a passenger in the truck, as a plaintiff. However, no issue was submitted to the jury regarding Jermaine. The original petition also asserted claims for strict liability for misrepresentation of product characteristics and breach of express and implied warranties. These claims were not submitted to the jury.

pected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

Question 4(A) asked whether the negligence, if any, of Ford proximately caused the injury to Searcy. Question 4(B) asked whether the negligence, if any, of Ford proximately caused the death of Searcy. Question 4 included the following definitions:

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

The jury answered "no" to questions 1, 2, and 3, thereby refusing to find that Searcy's death or injury was caused by a design, manufacturing, or marketing defect in the truck. The jury answered "no" to Question 4(B), thereby refusing to find that Searcy's death was caused by Ford's negligence. However, the jury answered "yes" to Question 4(A), thereby finding that Searcy's injury was proximately caused by Ford's negligence. The jury awarded approximately $4 million in compensatory damages. The jury also found that Ford's negligence constituted gross negligence and awarded almost $2 million in punitive damages.

In its first three issues, Ford argues that plaintiffs in a crashworthiness case such as this case must prove that the vehicle was defective, regardless of whether their claim is based on strict liability or negligence. In addition, Ford argues that the factual basis of all claims in this case is the same, that is, that the tension eliminator introduced slack in the shoulder belt causing Searcy's injury. From these propositions, Ford argues in its first two issues that the negligence theory should not have been submitted to the jury because it duplicated the claims for strict liability for design, manufacturing, and marketing defect. In its third issue, Ford argues that there is an irreconcilable conflict in the jury's verdict because the jury answered "no" to the three strict liability questions, thus determining that Miles failed to prove that a defect in the truck caused their injuries, but answered "yes" to the negligence question, thus finding the opposite of the strict liability findings. Ford requests rendition or, in the alternative, remand.

In its fourth through seventh issues, Ford challenges the answers to the punitive, loss-of-companionship, and mental anguish damages questions, the amount of prejudgment interest, and the calculation of postjudgment interest.

## CONFLICT

### Standard of Review

When determining whether jury findings irreconcilably conflict, we apply a de novo standard of review. *See Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). In reviewing the jury findings for conflict, the threshold question is whether the findings address the same material fact. *Id.* This Court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Id.* This Court must reconcile apparent con-

flicts in the jury's findings if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Id.* This Court does not determine whether the findings may reasonably be viewed as conflicting; to the contrary, the question is whether there is any reasonable basis upon which the findings may be reconciled. *Id.* However, if "one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict." *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 206, 222 S.W.2d 985, 991 (1949). If we determine that a fatal conflict exists, we must remand to the trial court for a new trial. *See Cotton Belt R.R. v. Hendricks,* 768 S.W.2d 865, 870 (Tex.App.-Texarkana 1989, no writ) (per curiam) (citing *Ins. Co. of N. Am. v. Brown,* 394 S.W.2d 787, 789 (Tex.1965)).

### Applicable Law

 Traditionally in Texas law, negligence and strict liability have been distinct causes of action. *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871 (Tex. 1978) (quoting *Rourke v. Garza,* 530 S.W.2d 794, 800 (Tex.1975)). When a trial court is confronted with several theories of recovery, the court must submit a charge to the jury with all questions, instructions, and definitions raised by the pleadings and evidence. *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez,* 995 S.W.2d 661, 663 (Tex.1999). An irreconcilable conflict can occur from the submission of these theories when the concept of defect at issue in the theories submitted is functionally identical and the resolution of the defect issue involves identical factual determinations. *See Otis Spunkmeyer, Inc. v. Blakely,* 30 S.W.3d 678, 690–91 (Tex. App.-Dallas 2000, no pet.) (citing *Hyundai,* 995 S.W.2d at 665).

 Although a negligence claim requires a different showing from a strict liability claim, it is not logical for a manufacturer to be held liable for failing to exercise ordinary care when producing a product that is not defective because: (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way; and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiff's injury because the negligence did not render the product "unreasonably dangerous." *Garrett v. Hamilton Standard Controls, Inc.,* 850 F.2d 253, 257 (5th Cir.1988). This analysis applies when a defective product theory encompasses and subsumes a negligence theory, that is, when the allegations and evidence are directed to whether the product is "unreasonably dangerous" and no other potentially negligent conduct is alleged or the subject of evidence. *See id.* & n. 8. In such a case, whether a plaintiff seeks recovery because of negligence or a theory of strict liability in tort, the burden is on the plaintiff to prove that the injury resulted from a defect in the product. *Simms v. Southwest Tex. Methodist Hosp.,* 535 S.W.2d 192, 197 (Tex.Civ.App.-San Antonio 1976, writ ref'd n.r.e.).

### Discussion

 In the probate court, Ford objected to the submission of the three products liability questions on defective design, manufacture, and marketing of the truck and of the negligence question. Ford argued that the submission of the negligence question was "duplicative" of the product liability theories and created a danger of conflicting jury answers. The "duplicative" and conflict arguments made by Ford were based upon the following claims in

Miles's petition: (1) The "First Cause of Action" is titled "Strict Liability for Design, Manufacture and Marketing of a Defective Product" and states specifically: "[T]he vehicle and product in question was and is unreasonably dangerous by reason of defects in design, manufacture and marketing." (2) The "Fourth Cause of Action" is titled "Negligence" and states specifically: "Ford failed to exercise ordinary care in the design, manufacture and marketing of the truck, which constitutes negligence."

When the jury answered "no" to each of the defect issues submitted and "yes" to the negligence question, Ford objected that there was, indeed, a conflict in the answers and requested entry of a judgment notwithstanding the verdict. Ford argued in the trial court and asserts on appeal that there is a fatal conflict in the answers to the issues since the factual basis for the claims is dependent upon finding a defective product as an element of each claim. Since no defect in the "truck" was found, Ford argues there could be no negligence in the "design, manufacture and marketing" of the truck. Ford argues that *Hyundai*, 995 S.W.2d at 665, *Simms*, 535 S.W.2d at 197, and *General Motors Corp. v. Paiz*, No. 05–98–01340–CV, 2000 WL 1751096, at *3–4 (Tex.App.-Dallas 2000, no pet.) (not designated for publication),[2] support its contention of irreconcilable conflict.

In *Paiz*, a plaintiff sued General Motors Corp., alleging a defective front seat of a Camaro caused injuries. The court submitted one question asking whether a de-

sign defect in the Camaro at the time it left the possession of the manufacturer was a producing cause of the injury in question and another question asking whether the negligence of the manufacturer proximately caused the injury in question. *See Paiz*, 2000 WL 1751096, at *1–2. The jury answered the first question in the negative and the second question affirmatively. The manufacturer appealed, arguing that the jury's answers were in conflict because both the strict liability and negligence theories had in common a defective product element. Specifically, General Motors argued that both questions had a defective design as a common element and that the defective design was "functionally identical" in both causes of action. *Id.* at *3. Relying on *Hyundai Motor Co.* and *Simms*, this Court, in an unpublished opinion, agreed and reversed the judgment because of a fatal conflict in the answers.

*Paiz* relied on *Simms* for the proposition that both negligence and strict liability for defective design require proof of a defect in the product. *See Paiz*, 2000 WL 1751096, at *4 (citing *Simms*, 535 S.W.2d at 197). *Simms*, in turn, relied on a legal treatise to support the proposition that "[w]hether plaintiff sought recovery because of negligence, breach of warranty, or a theory of strict liability in tort, the burden was on her to prove that her injury resulted from a defect in the product." *See Simms*, 535 S.W.2d at 197 (citing 1 ROBERT D. HURSH & HENRY J. BAILEY, AMERICAN LAW OF PRODUCTS LIABILITY § 1.29 (2d ed.1974)).[3]

---

**2.** As an opinion not designated for publication, *Paiz* has no precedential value. *See* TEX. R.APP. P. 47.7.

**3.** Section 1:29 of the second edition provides: "Proof that a defect in the product caused the injury in controversy is prerequisite to recovery for product-caused injury in every products liability case,[ ] whether founded on

negligence,[ ], breach of warranty,[ ] strict liability in tort,[ ] or a combination of such theories.[ ]" 1 Hursh & Bailey, *supra*, § 1:29 (footnotes omitted). Section 3.1 of the current edition provides: "In a products liability action, whatever the theory, the plaintiff has the burden of proving that the injury-causing product was defective. . . ." 1 AMERICAN LAW OF PRODUCTS LIABILITY § 3:1 (John D. Hodson, ed.,

Miles argues that *Paiz* and *Simms* do not accurately state the law of products liability in Texas. Specifically, Miles claims that negligence under Texas law does not require proof of a defect in the product. However, in a crashworthiness case, the claim is that a defect in the vehicle caused an occupant to sustain injuries in an accident that he or she would not otherwise have suffered. *Hyundai*, 995 S.W.2d at 665. "The concept of defect is considered central to any products liability action, whether the alleged defect occurs in the design, manufacturing, and/or marketing of the product." *Rodriguez ex rel. Rodriguez v. Hyundai Motor Co.*, 944 S.W.2d 757, 769 (Tex.App.-Corpus Christi 1997) (citing *Turner v. Gen. Motors Corp.*, 584 S.W.2d 844, 847 (Tex.1979)), *rev'd on other grounds*, 995 S.W.2d 661 (Tex.1999); *see Patterson v. Rohm Gesellschaft*, 608 F.Supp. 1206, 1211 (N.D.Tex.1985) ("There can be no valid products liability claim without a product which has a defect."). Accordingly, a products liability theory in a crashworthiness case rests on a defect in the vehicle under any theory asserted. However, under a negligence theory, foreseeability is required, while it is not required under a strict liability theory. *See Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 328 (Tex.1968). We reject Miles's argument as to *Paiz* and *Simms*.

Next, Miles argues that *Hyundai* is not on point. *Hyundai* involved claims of strict product liability, negligence, and breach of the implied warranty of merchantability. The plaintiff claimed that the Honda-manufactured car from which she was thrown in an accident was not crashworthy because the roof structure, padding, and passenger restraint system were defectively designed so that she was thrown into the roof in an accident and injured more seriously than she would

have been otherwise. *Hyundai*, 995 S.W.2d at 662. The trial court submitted a strict liability for design defect question. The issue before the supreme court in *Hyundai* was whether the trial court should have submitted a question and instruction on the breach of warranty claim. *Id.* at 663. The supreme court considered the definitions of "defect" pursuant to the strict liability for design defect and breach of warranty claims. *Id.* at 665. The court concluded that the definitions, in a crashworthiness case where the complaint and evidence related to the same defect, were "functionally identical" because the defect in the vehicle that made it "uncrashworthy and thus causes occupants to be exposed to an unreasonable risk of harm in the event of an accident was *both* 'unfit for the ordinary purposes for which [it is] used because of a lack of something necessary for adequacy' *and* unreasonably dangerous." *Id.* (quoting *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex.1989)). Accordingly, all theories in *Hyundai* were predicated on the same complaint, that defects in the roof and in the restraint system made the vehicle unreasonably dangerous, and the evidence supported both the claim for breach of implied warranty and the strict liability claim. *Id.* at 662, 665. The questions submitted called for the same factual finding. *See id.* at 666. Ford raises this point in its first three issues. We reject Miles's argument that *Hyundai* is not on point.

It is Miles's next contention that the evidence of negligence is separate and distinct from the strict liability theory. Miles points to the following facts as evidence of negligence, causation, and gross negligence:

Ford knew the tension eliminator caused excessive slack, which was dan-

3d. ed.1987) (citing, e.g., *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372 (Tex.1984)).

gerous because it reduced seat belt effectiveness and caused injuries;

Ford knew its customers had large amounts of slack created by the tension eliminator;

Ford was actually aware of the confusion and misunderstanding about the proper use of the tension eliminator but did nothing and refused repeated requests from its engineers to educate its dealers and customers;

Ford's decisions to use the tension eliminator were "competitive and economic in nature" because other manufacturers were employing tension-relieving "comfort features";

Ford realized substantial profit, not loss, by using the tension eliminator;

Ford never believed the tension eliminator increased seat belt usage; and

Several clearly safer alternative designs to the tension eliminator existed, some of which were used by Ford.

Nevertheless, in its brief, Miles notes that "Searcy's injuries were caused by the excessive slack present in the shoulder belt portion of his restraint system." Nowhere did Miles allege that the crash caused Searcy's injuries. Rather, the pleadings claimed that the truck was unreasonably dangerous because of the defects. Miles does not show us in its brief, nor can we find otherwise, that the evidence supporting these facts was offered to prove one product liability theory and not the other. These facts point equally to and support a claim respecting a design, manufacture, and marketing defect in the "truck" as well as negligence. The questions submitted to the jury inquired only whether the truck was defective. Accordingly, we reject Miles's claims that the facts on which submission of the negligence issue were based are independent of the strict liability questions. *See id.* at 665.

■ Additionally, we note that the strict liability claims were submitted with an inquiry of whether they were the "producing cause" of the injuries. The negligence question was submitted with an inquiry whether those acts were the "proximate cause" of the injuries. Proximate causation subsumes within it the concept of producing cause. *Otis Spunkmeyer, Inc.,* 30 S.W.3d at 691. If a defect is not a producing cause of an injury, it cannot constitute, as a matter of law, a proximate cause. *Id.*

In this regard, Miles argues that the difference in the answers between the strict liability and negligence questions can be explained by the burden of proof, that is, that since proximate cause has a greater burden of proof than producing cause, Miles carried its burden of proof by convincing the jury that it should answer the negligence question in the affirmative. We cannot agree. The burden of proof of causation does not determine the independent basis of the negligence claim. Rather, the basis of the claims turns on the fact that the alleged defective truck was the focus of Miles's claims. If the jury failed to find the truck defective and the cause of the injury when evaluating the less demanding test of producing causation, then it is not logical to argue that the same defect was the cause of the injuries based on a theory of negligence, which uses a more demanding and restrictive theory of causation. *See id.*

■ Lastly, we address Miles's argument that Ford waived its complaints as to the jury's answers to the liability questions because, under the law of the case doctrine, this Court's decision in *Miles,* No. 05–99–01258–CV, 2001 WL 727355, required submission of gross negligence, and "gross negligence is not, and cannot be a theory or recovery separate and apart from negligence." However, punitive

damages are available for gross negligence or malice in strict liability. *See Heil Co. v. Grant,* 534 S.W.2d 916, 926 (Tex.Civ.App.-Tyler 1976, writ ref'd n.r.e.). Accordingly, we reject Miles's argument that this Court's decision in the previous appeal required submission of the negligence and gross negligence questions by its ruling on the gross negligence issue.

■ Based on the above analysis, we conclude that the negative answer to the strict liability questions and the affirmative answer to the negligence question are in fatal conflict. *See Little Rock Furniture Mfg. Co.,* 148 Tex. at 206, 222 S.W.2d at 991; *Otis Spunkmeyer, Inc.,* 30 S.W.3d at 691. Accordingly, now we must determine the proper method of addressing the trial court's judgment. Ford tells us that we should render judgment based on the supreme court's decision in *Hyundai.* However, we do not agree.

In *Hyundai,* the supreme court addressed a challenge to the trial court's failure to submit a breach of warranty claim. The court of appeals reversed the trial court and remanded the case. The supreme court determined that the trial court had made the proper decision and reversed and rendered judgment. *Hyundai,* 995 S.W.2d at 668. Here, in contrast, the trial court submitted the negligence issue. The parties have asked us to address a conflict issue, not a failure to submit issue. Ford cites no case in which the supreme court directed a case be reversed and rendered when a jury's answers to issues resulted in an irreconcilable conflict. Accordingly, we resolve Ford's first and second issues against it, and we resolve Ford's third issue in its favor.

## CONCLUSION

We reverse the trial court's judgment in its entirety and remand this case to the trial court for further proceedings consis-

tent with this opinion. *See Cotton Belt R.R.,* 768 S.W.2d at 870. Because of our disposition of issue three, we need not address Ford's remaining issues. *See* Tex. R.App. P. 47.1.