**Affirmed and Memorandum Opinion filed July 12, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00818-CV

### LILIAN GARRICK, Appellant

### V.

### AUTOLIV ASP, INC., AUTOLIV SAFETY TECHNOLOGY, INC., KIA MOTORS AMERICA, INC., AND KIA MOTORS CORPORATION, Appellees

**On Appeal from the 458th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 15-DCV-228104**

## MEMORANDUM OPINION

This is an appeal from a no-evidence summary judgment in a products liability action. The plaintiff in that action argues that the summary judgment should be reversed for two independent reasons: first, the defendants gave inadequate notice of the summary-judgment hearing; and second, notwithstanding the inadequate notice, the plaintiff filed a response, and the response raised more than a scintilla of

evidence as to each element challenged by the defendants. For reasons explained more fully below, we overrule the plaintiff's arguments and affirm the trial court's judgment.

## BACKGROUND

On a foggy night, at approximately 2:30 in the morning, Lilian Garrick lost control of her vehicle and drove off the road. She ran over a traffic sign, proceeded over a railroad track, and then crashed into a pole. Her airbags did not deploy, and she suffered bodily injury in the crash.

Garrick alleged that the crash was the result of her steering suddenly locking and her vehicle spontaneously accelerating. Garrick sued the maker of her vehicle and a related entity, which we collectively identify as "Kia." She also sued two entities, which we collectively identify as "Autoliv," who were the makers of her airbags and seatbelts. Against both Kia and Autoliv, Garrick asserted claims of strict liability, negligence, and breach of implied warranty of merchantability.

Garrick was represented by counsel at the time of her pleadings, but after more than a year of representation, her counsel moved to withdraw for reasons that were submitted *in camera*. The trial court granted the motion to withdraw and afforded Garrick sixty days to find a new lawyer. The trial court also set a status conference at the expiration of those sixty days.

In advance of the status conference, Kia moved for summary judgment on no-evidence grounds, challenging every essential element for every single one of Garrick's causes of action. Autoliv separately moved for summary judgment, also on no-evidence grounds. Autoliv's motion tracked Kia's motion, and both Autoliv and Kia set their motions for hearing on the same day as the status conference.

In response to Kia's motion, Garrick filed a pro se objection in which she asserted that summary judgment was "premature" because she had not yet secured new counsel. Garrick also attached an affidavit in which she testified that she had diligently approached more than thirty attorneys, but they all declined to represent her. Garrick requested a six-month continuance to find a new lawyer and develop her necessary evidence.

Following Autoliv's motion, Garrick made two additional pro se filings. The first filing was a motion for the trial court to reconsider its ruling on her previous counsel's motion to withdraw. The second filing was a substantive response to the motions for summary judgment. The evidence attached to the response included the following: (1) an affidavit from Garrick, which detailed her efforts to find new counsel; (2) pictures of Garrick and her vehicle after the crash; (3) medical records from various hospitals, physicians, and EMS personnel; (4) a police report that documented the crash; (5) a report produced from the vehicle's "black box" data recorder; (6) promotional material that advertised the vehicle's advanced safety systems; (7) a recall notice from Kia; and (8) two news reports about a recall notice from Autoliv.

Garrick's second filing also served as another objection that summary judgment was "premature." Once again, the basis for the objection was Garrick's inability to find counsel. Garrick moved for another continuance in this filing, but she added to the relief requested in her initial objection by asking for a total of seven months to hire a lawyer and develop her evidence.

On the day of the summary-judgment hearing, Garrick appeared without counsel and reiterated her difficulties in securing representation. At the end of the hearing, the trial court denied Garrick's motion to reconsider its ruling on the motion to withdraw, and it granted the two motions for summary judgment. The trial court

signed two separate orders on the motions for summary judgment, resulting in a final judgment from which Garrick now appeals.

## INADEQUATE NOTICE

In the first of her two issues, Garrick argues that the trial court's judgment should be reversed because Kia and Autoliv provided inadequate notice of the summary-judgment hearing.

By rule, the summary-judgment movant must provide at least twenty-one days' notice before the trial court can hear the motion. *See* Tex. R. Civ. P. 166a(c). If notice of the hearing is served by mail, instead of electronically, the movant must provide an additional three days to the prescribed period, for at least twenty-four days' notice. *See* Tex. R. Civ. P. 21a(c); *Lewis v. Blake*, 876 S.W.2d 314, 315–16 (Tex. 1994) (per curiam).

Garrick asserts that Kia and Autoliv provided insufficient notice of the hearing. Kia sent its notice by certified mail, and the record reflects that Garrick received that notice because she attached a copy of it to one of the pro se motions that she filed in advance of the summary-judgment hearing. Notwithstanding this receipt, Kia's notice was dated only twenty-three days before the hearing, which was insufficient. Autoliv's notice, which was also sent by certified mail, was dated only twenty-one days before the hearing, meaning that it too was insufficient.

Having established that she received inadequate notice of the hearing from both summary-judgment movants, Garrick argues that the judgment must be reversed, citing *Tanksley v. CitiCapital Commercial Corp.*, 145 S.W.3d 760 (Tex. App.—Dallas 2004, pet. denied). That case is inapposite. The nonmovant there received no notice of the hearing and did not attend the hearing, *id.* at 764, whereas Garrick both received notice of the hearing and attended the hearing. Garrick's

attendance meant that she had an opportunity to object, which is significant because inadequate notice is a nonjurisdictional defect that the nonmovant can waive. *See French v. Brown*, 424 S.W.2d 893, 894 (Tex. 1967).

For complaints of notice defects, the error-preservation rules are as follows:

> A party who has no notice of the summary judgment hearing is unable to attend the hearing and should be able to preserve error by post-trial motion alone. If, on the other hand, a party receives notice that is untimely, but sufficient to enable the party to attend the summary judgment hearing, the party must file a motion for continuance and/or raise the complaint of late notice in writing, supported by affidavit evidence, and before the trial court during the summary judgment hearing. To hold otherwise would allow a party who participated in the hearing to lie behind the log until after the summary judgment is granted and then raise the complaint of late notice for the first time in a post-trial motion.

*Rios v. Tex. Bank*, 948 S.W.2d 30, 33 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (citations omitted).

Garrick contends that she preserved error under these rules because she repeatedly moved for a continuance. But her motions for continuance were based on her inability to find counsel, not on inadequate notice, and through her motions, Garrick sought months of additional time, rather than the twenty-four days to which she was entitled. These motions did not preserve a complaint about inadequate notice. *See Hudenburg v. Neff*, 643 S.W.2d 517, 518–19 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (a motion for continuance "based solely on appellant's physical condition" did not preserve a complaint about inadequate notice).

Garrick received notice that was untimely but sufficient to enable her to attend the summary-judgment hearing. Under our error-preservation rules, she was required to bring the notice defects to the specific attention of the trial court before the summary-judgment hearing. *See Rios*, 948 S.W.2d at 33; *Stephens v. Turtle*

*Creek Apartments, Ltd.*, 875 S.W.2d 25, 26 (Tex. App.—Houston [14th Dist.] 1994, no writ). Because she did not, we conclude that Garrick did not preserve her appellate complaint of inadequate notice. We overrule this issue.

## THE MERITS

Having overruled Garrick's first issue, which raised a procedural challenge to the summary judgment, we now proceed to her second issue, which raises a merits challenge to the summary judgment.

We review summary judgments de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam). When a movant seeks a summary judgment on no-evidence grounds, the nonmovant has the burden to present evidence that raises a genuine issue of material fact as to each element specified in the motion. *See* Tex. R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). We review the evidence presented by the nonmovant using the same legal-sufficiency standard as we apply in reviewing a directed verdict. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence summary judgment must be sustained if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Because a no-evidence summary judgment may only be granted as to a claim for which the nonmovant bears the burden of proof at trial, we begin by identifying

Garrick's various claims. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

Against both Kia and Autoliv, Garrick asserted three types of strict liability claims: design defect, manufacturing defect, and marketing defect. Garrick based these claims on alleged defects in the systems responsible for her vehicle's steering, acceleration, airbags, and seatbelts. In her negligence claim, Garrick alleged that Kia and Autoliv breached the standard of ordinary care by designing, manufacturing, and marketing her vehicle with these defects. And in her warranty claim, Garrick alleged that Kia and Autoliv breached an implied warranty of merchantability by selling her a vehicle with these defects.

Addressing each of these claims individually, Kia and Autoliv represented that Garrick had no evidence to support every essential element for her claims. We now identify the essential elements of those claims.

## A. Design Defect

To recover on a products liability claim arising out of a design defect, the plaintiff must prove each of the following elements: (1) the product was defectively designed so as to render it unreasonably dangerous, (2) a safer alternative design existed, and (3) the defect was a producing cause of the plaintiff's injuries. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).

We can dispose of this claim on the second element alone. For all four defects alleged in her pleadings (steering, acceleration, airbags, and seatbelts), Garrick produced no evidence of a safer alternative design. Garrick's response does not even identify the basic requirements of a safer alternative design. *See Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 7 (Tex. 2015) (a safer alternative design must prevent or significantly reduce the risk of injury, it must have been economically and

7

technologically feasible at the time, and it must not substantially impair the product's utility).

Nevertheless, Garrick contends for the first time on appeal that she raised a fact issue as to the existence of a safer alternative design. She refers to the recall notice from Kia, which addressed a defect in the acceleration system (but not the steering system) of certain vehicles manufactured between October 2014 and January 2015. She also refers to the news reports about Autoliv's recall, which addressed defects in certain airbags and seatbelts that were manufactured in 2016.

None of this evidence raises a genuine issue of material fact. Garrick's vehicle was manufactured in July 2014, which is outside the scope of Kia's recall. And her crash occurred in December 2014, meaning that her airbags and seatbelts were not affected by Autoliv's recall. This recall evidence has no bearing on whether the systems in Garrick's vehicle had safer alternative designs.

## B.  Manufacturing Defect

To recover on a products liability claim arising out of a manufacturing defect, the plaintiff must prove each of the following elements: (1) the product deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous, (2) the product was defective when it left the hands of the manufacturer, and (3) the defect was a producing cause of the plaintiff's injuries. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41–43 (Tex. 2007); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

The summary-judgment response is completely silent as to the first element. Garrick did not address that element in her response, nor did she attach any evidence that raises a fact issue as to whether there was a deviation in the specifications or planned outputs affecting her vehicle's steering, acceleration, airbags, and seatbelts.

8

Garrick argues that she could raise a fact issue as to the first element merely by showing that a product was unreasonably dangerous—i.e., without showing a deviation. That argument is foreclosed by *Ledesma*, where the supreme court held that a jury charge on a manufacturing-defect claim was erroneous for omitting the "indispensable element" of a product deviation. *See Ledesma*, 242 S.W.3d at 41; *id.* at 42 (explaining that the deviation element "serves the essential purpose of distinguishing a manufacturing defect from a design defect").

Without evidence of the specifications or planned outputs regarding her vehicle's steering, acceleration, airbags, and seatbelts, Garrick cannot establish the deviations required of her claimed manufacturing defects.

## C.    Marketing Defect

To recover on a products liability claim arising out of a marketing defect, the plaintiff must prove each of the following elements: (1) a risk of harm was inherent in the product or might arise from the intended or reasonably anticipated use of the product, (2) the supplier of the product knew or reasonably could foresee the risk of harm at the time the product was marketed, (3) the product had a marketing defect, (4) the lack of instructions or warnings rendered the product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure to warn or instruct caused the user's injuries. *See Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Garrick addressed this claim in her summary-judgment response, and we reproduce the entirety of that response here (with all emphases belonging to Garrick):

**Defendant's Awareness of the Defect(s) and Failure to Warn or Issue Adequate and Appropriate Voluntary Safety Recalls in a timely manner**

Plaintiff Lilian Garrick had no knowledge whatsoever nor was she made aware about possible defects in the leased 2015 KIA Sorento when she used the vehicle in a way it was meant to be used nor did the Defendants issue any voluntary safety recall until after the fact. Plaintiff was only made aware of the product's extensive features especially in its Advanced Safety System which included a sophisticated *"Airbag System; 8 airbags and seatbelt pretensioners which work to tighten seat belts to better secure a driver or passenger in the event of a crash."* However, according to Defendant KIA's safety recalls voluntarily issued in February 2015 for a *"faulty accelerator pedal assembly"*, it only conducted recalls on certain 2016 MY KIA Sorento manufactured [on or after] **October 27, 2014**; the 2015 MY KIA Sorento in this lawsuit was manufactured [on] **July 3, 2014**. Approximately a year later, Defendant Autoliv informs NHTSA (National Highway Traffic Safety Administration) that *"automakers may recall as many as 400,000 vehicles that have Autoliv seat belt assemblies and air bag parts due to possible glitches in its widely used belt pretensioners which work to tighten seat belts to better secure a driver or passenger and a product that initiates the process of inflating an airbag."* Defendant Autoliv also states *"its products are fitted in some 1,300 auto models worldwide but **failed to specify** which automakers were affected."*

Only two items of evidence were cited in connection with this response: the recall notice from Kia, and one of the articles that discussed the recall notice from Autoliv. As we explained in a previous section of this opinion, neither of those recalls affected Garrick's vehicle.

We conclude that the response is silent regarding the third element of Garrick's claim. Garrick produced no evidence that Kia failed to warn about any issues in the vehicle's steering or acceleration systems, or, if Kia had made such a warning, that the warning was inadequate. Likewise, Garrick produced no evidence that Autoliv failed to warn about any issues in its airbags or seatbelts, or that any warnings that had been given were inadequate.

10

Garrick argues in her brief that a failure to warn will be assumed where it is shown that a defect caused a plaintiff's injuries. For that proposition, Garrick relies on *General Motors Corp. v. Saenz*, 873 S.W.2d 353 (Tex. 1993)—but that case holds that the causation element can be presumed in certain failure-to-warn cases. *Id.* at 357–59. Contrary to Garrick's assertions, it does not hold that the failure-to-warn element can also be presumed.

## D.    Negligence

To recover on a negligence claim arising out of a product defect, the plaintiff must prove each of the following elements: (1) the defendant failed to exercise ordinary care in the design, manufacturing, or marketing of the product; and (2) the defendant's breach proximately caused the plaintiff's injuries. *See Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978).

The first element requires proof of a product defect. *See Ford Motor Co. v. Miles*, 141 S.W.3d 309, 318 (Tex. App.—Dallas 2004, pet. denied) (holding that a jury could not logically find that the defendant was negligent in a products case if the jury also found that there was no design defect, manufacturing defect, or marketing defect). And as we explained above, Garrick failed to raise a genuine issue of material fact as to an essential element of each of her defect claims. Because Garrick produced no evidence of a defect, she also failed to raise a genuine issue of material fact in support of her negligence claims. *See, e.g., Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384–85 (Tex. 1995) (holding that a negligent-design claim failed as a matter of law because there was no evidence of a safer alternative design).

Garrick suggests that an inference of negligence can be made under the doctrine of *res ipsa loquitur*. Literally meaning "the thing speaks for itself," *res ipsa loquitur* is a rule of evidence that applies in limited types of cases in which the circumstances surrounding an accident are such that the mere occurrence of the

11

accident supports reasonable inferences that there was negligence involved and that the defendant was the negligent party. *See Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982). The rule does not exist as a separate cause of action; rather, it exists "to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *See Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982).

*Res ipsa loquitur* is applicable only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *See Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). The "control" requirement is not a rigid rule that the instrumentality must have always been in the defendant's possession or even that it must have been in the defendant's control at the time of the injury. *See Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974). It is sufficient if the defendant was in control at the time that the negligence inferable from the first factor probably occurred, so that the reasonable probabilities point to the defendant and support a reasonable inference that the defendant was the negligent party. *Id.* The possibility of other causes does not have to be completely eliminated, but their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door. *Id.*

Garrick invoked the doctrine of *res ipsa loquitur* in her pleadings, specifically with regard to her negligence cause of action. Kia and Autoliv also addressed the doctrine in their motions for summary judgment. Focusing solely on the doctrine's

second factor, Kia and Autoliv asserted that Garrick had no evidence that her vehicle was under their management or control.

Garrick argues on appeal that *res ipsa loquitur* applies in this case because the evidence established that her vehicle was in new condition (approximately five months old) and there was no indication that it had ever been repaired or altered. Garrick did not raise these points in the trial court. In fact, her summary-judgment response is completely silent as to the issue of *res ipsa loquitur*. Even if we were to assume that Garrick's appellate points had merit, they could not support a reversal because Garrick did not expressly present them in her summary-judgment response. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) ("A party who fails to expressly present to the trial court any written response in opposition to a motion for summary judgment waives the right to raise any arguments or issues post-judgment.").

## E.     Breach of Implied Warranty of Merchantability

To recover on a claim for breach of implied warranty of merchantability, the plaintiff must prove each of the following elements: (1) the defendant sold or leased a product to the plaintiff, (2) the product was not merchantable, (3) the plaintiff notified the defendant of the breach, and (4) the plaintiff suffered injury. *See Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.); *see also Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (quoting these elements from *Polaris*).

We need only address the second element. A product is not merchantable if it is unfit for the ordinary purpose for which it is used. *See* Tex. Bus. & Com. Code § 2.314(b)(3). This merchantability standard is "functionally identical" to the strict-

13

liability concept of "defect" in a crashworthiness case. *See Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999). "An uncrashworthy vehicle cannot be unfit for ordinary use but not unreasonably dangerous, nor can it be unreasonably dangerous but fit for ordinary use; it must be both or neither." *Id.*

As explained above, Garrick failed to raise a genuine issue of material fact as to an essential element of each of her defect claims. Without evidence of a defect, Garrick did not raise a fact issue that any part of her vehicle was unreasonably dangerous or unfit for ordinary use.

For the foregoing reasons, we conclude that Garrick failed to raise a genuine issue of material fact as to an essential element for each of her claims. The trial court's no-evidence summary judgment in favor of Kia and Autoliv was therefore appropriate.

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
         Justice

Panel consists of Justices Boyce, Christopher, and Busby.