

# NUMBER 13-21-00248-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DANIEL CHRISTOPHER TAYLOR,                               Appellant,

v.

BERGSTROM, INC.,                                       Appellee.

## On appeal from the 343rd District Court
## of Bee County, Texas.

# MEMORANDUM OPINION

## Before Justices Tijerina, Silva, and Peña
## Memorandum Opinion by Justice Tijerina

Appellant Daniel Christopher Taylor appeals from the trial court's summary judgment in favor of appellee Bergstrom, Inc. regarding an allegedly defective under-the-seat heater in a bus that injured him. Taylor argues that the trial court erred in granting the summary judgment because: (1) there were no substantial alterations to the heater; (2) Bergstrom had a duty of warning; (3–4) there were material fact issues regarding (a)

Bergstrom's design and marketing of the heater, and (b) Bergstrom's gross negligence. We affirm.

## I. BACKGROUND

Taylor was incarcerated in the Texas Department of Criminal Justice McConnell Unit (TDCJ). On January 10, 2018, Taylor began a three-day transfer by bus to another unit for medical treatment. While being transported, Taylor sustained burn injuries to his gluteal areas and legs when his bus seat reached excessive temperatures due to the under-seat heater. Taylor suffered second- and third-degree burns that required a skin graft.[1]

The under-seat heater was manufactured by Bergstrom in its China facility and then sold in 2007 to Blue Bird, a company that manufactures buses. Blue Bird then sold the bus and heater to TDCJ. Employees from TDCJ's mechanical shop department directed and supervised inmates while inmates installed plastic seats in the bus and heaters under the bus seats. Bergstrom did not install the heater on the bus or perform any repairs or maintenance on the heater after it was sold to Blue Bird.

### A. Traditional Motion for Summary Judgment

On January 4, 2021, Taylor sued Bergstrom, alleging negligence and gross negligence in the design, manufacturing, and marketing of the heater.[2] Bergstrom filed a joint motion for traditional and no-evidence summary judgment. In its traditional summary

---

[1] Taylor is permanently disabled and paraplegic; he lacks sensation from his waist down due to a spinal injury he sustained in his youth.

[2] Taylor also sued TDCJ, Blue Bird, and other defendants that are not parties to this appeal. The trial court denied TDCJ's plea to the jurisdiction, and we affirmed. *See Tex. Dep't Crim. Just. v. Taylor*, 13-21-00246-CV, 2021 WL _____ (Tex. App.—Corpus Christi–Edinburg June 8, 2023, no pet. h.) (mem. op.).

judgment motion, Bergstrom asserted it was not responsible for Taylor's injuries because: (1) Taylor's injuries were caused by a substantial alteration by a third-party; (2) substantial alterations to the heater were not foreseeable; (3) Bergstrom had no duty to warn of the possibility of third-party replacing the heater with incompatible parts; and (4) the heater was not defective when it left Bergstrom's facility. As summary judgment evidence, Bergstrom attached a deposition excerpt from TDCJ's mechanical shop employee, Clifford Pegoda, a declaration from Bergstrom's Director of Supplier Quality Engineer, Richard Knott, and a deposition excerpt from Taylor's expert, Bradley Plank, P.E.

In his declaration, Knott noted that upon completion of his inspection, the metal cage surrounding the heater was not manufactured or supplied by Bergstrom and that the grey plastic bus seats were not the "standard Blue Bird bus school seats for which Bergstrom understands that its under[-]seat heaters are used." Knott further asserted that the heater, as designed and manufactured by Bergstrom, pulls air down through its core, where it is heated, and then the heated air is expelled down and out through the bottom and side openings. However, after testing the heater at issue, he discovered that this heater was pulling ambient air in through the sides or bottom and then pushing the air into the heater core. The warmed air was then being expelled through the top of the heater. In other words, the airflow in the heater was backwards when compared to the airflow as originally designed and manufactured by Bergstrom in 2007. Knott further clarified that the motor inside this heater and the axial fan blade were not the original parts that were installed in the heaters as manufactured and sold by Bergstrom in 2007, and they were not original equipment manufacturer replacement parts. Knott attached pictures

3

of his findings to his declaration.

**B.     No-Evidence Summary Judgment**

In its no-evidence summary judgment motion, Bergstrom asserted Taylor produces no-evidence that Bergstrom was negligent in manufacturing, designing, or marketing the heater, and it challenged each element accordingly. It further asserted Taylor provided no evidence of a gross negligence claim on the elements of an extreme risk and Bergstrom's awareness of an extreme risk.

**C.     Taylor's Response and Bergstrom's Reply**

Taylor responded to the traditional summary judgment claiming there was no substantial alteration to the heater; Bergstrom was aware of aftermarket parts that were used in its heaters; and Bergstrom had a duty to warn the public of any potential risks. Regarding the no-evidence summary judgment, Taylor asserted that Bergstrom was negligent because it failed to exercise ordinary care in the design, manufacturing, or marketing of the heater. Regarding gross negligence, Taylor claimed there was an extreme degree of risk due to the fact that the airflow was easily reversed, and the temperature rose to over 200 degrees. Bergstrom replied that Taylor did not offer proof of a product defect or a design or marketing defect.

**D.     Trial Court's Ruling**

The trial court granted Bergstrom's joint motion for traditional and no-evidence summary judgment, disposing of all Taylor's claims. This appeal followed.

## II.     STANDARD OF REVIEW

We review the trial court's grant of a motion for summary judgment de novo. *Mann*

*Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing a no-evidence summary judgment motion, we must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. *See* TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). The nonmovant is required to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte Indus.*, 286 S.W.3d at 310. A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). When a party moves for summary judgment on traditional and no-evidence grounds, we first review the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). When, as here, "a trial court's order granting summary judgment does not specify the grounds relied upon, [we] must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III. DESIGN DEFECT

5

First, we address Taylor's third issue that there were material fact issues regarding Bergstrom's design of the heater because is it dispositive to the no-evidence summary judgment. *See Ridgway*, 135 S.W.3d at 600.

Generally, "strict products liability and negligence are separate causes of action with different elements." *Shaun T. Mian Corp. v. Hewlett–Packard Co.*, 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied). However, when the plaintiff alleges no negligence other than whether the product was unreasonably dangerous when it was sold, as Taylor did here, the negligence theory is "encompassed and subsumed" in the defective product theory. *Shaun T. Mian Corp.*, 237 S.W.3d at 857 (providing that the plaintiff's burden at trial "would be to prove injury resulting from a product defect"). Here, Taylor's negligence theory is subsumed in the defective product theory because all of his arguments encompass a design defect. *See id.* That is, his arguments in the trial court and on appeal—that Bergstrom allegedly defectively designed the heater—are based on a strict products liability claim. *See id.* Therefore, because the same analysis applies where both theories of negligence and strict liability involve the underlying concept of a defect, absent a defect, Bergstrom could not have been negligent. *See Ford Motor Co.*, 141 S.W.3d at 315 ("It is not logical for a manufacturer to be held liable for failing to exercise ordinary care when producing a product that is not defective because . . . if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way . . . ."); *see also Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871, 872 (Tex. 1978) (providing that to recover on a negligence claim arising out of

6

a product defect, the plaintiff must prove: (1) the defendant failed to exercise ordinary care in the design, manufacturing, or marketing of the product; and (2) the defendant's breach proximately caused the alleged injuries).[3] Accordingly, we consider whether Taylor provided evidence of design defect. *See Ford Motor Co.*, 141 S.W.3d at 315.

## A. Applicable Law

To recover for strict liability alleging a design defect, a plaintiff must prove that: (1) the product was defectively designed, rendering it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte*, 286 S.W3d at 311; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a). "A safer alternative design is one that would have prevented or significantly reduced the risk of the injury, would not substantially impair the product's utility, and was economically and technologically feasible at the time." *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 7 (Tex. 2015); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a)–(b). A plaintiff complaining of a defective design has "the burden of demonstrating by a preponderance of the evidence that a safer alternative design existed at the relevant time." *Honda of Am. Mfg., Inc. v. Norman*, 104 S.W.3d 600, 605 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Additionally, the plaintiff must show that the safety benefits from this alternative design are foreseeably greater than the resulting costs. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998). "[T]hat

---

[3] "To establish breach of duty, the plaintiff must show that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care." *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 385 (Tex. App.—Tyler 2009, pet. denied).

7

is, that the alternative design not only would have reduced the risk of harm in the instant case, but also would not, under other circumstances, impose an equal or greater risk of harm." *Honda*, 104 S.W.3d at 605 (internal citations omitted).

## B. Analysis

Taylor's evidence of a safer design alternative for the heater came from one source: deposition testimony from his retained expert, Plank. When questioned about a potential safety device on the heater, Plank stated:

> One thought I had was putting some sort of a (unintelligible) around it and putting the fuses on that (unintelligible) so it would blow air elsewhere into the bus to distribute the air better . . . . [O]ne thing you could do if you didn't turn it upside, you could at least fix it so the fan runs in the opposite direction. You'd have to change the direction of the motor and change the design of the fan blades to pull air down through the—the heater core instead of blowing it up. You can do that. That would be safer and put air along the floor . . . . You know, in the event that there's someone on a bus that's not cooperating in turning down the heat you've got a rear heater that's, you know, wildly out of control. So you do have to have some sort of an automatic shut[-]down. Again, it would take some experimentation to determine what temperature that could be—the thermal switch should be set at and where it should be located in order to protect someone sitting on a seat like that. But given all the facts we got here that someone could reverse the fan direction, someone could not turn down the heat at the request of the people that are closest to it, there has to be some sort of protection there, like some sort of a thermal switch that would shut the system down.

On appeal, the extent of Taylor's argument regarding the evidence of a safer alternative design is as follows: "[Plank] stated that there were safer alternative designs with respect to terminating excessive heat." Taylor does not cite to any legal authority or provide a legal analysis of how that authority is applicable to the facts here. *See* TEX. R. APP. P. 38.1(i). Taylor does not explain how Plank's testimony is evidence that a safer alternative design existed. *See id.*; *Honda*, 104 S.W.3d at 605. Plank makes a reference

8

to the heater possibly having an "automatic shut down"; however, he admits that he does not "know exactly where to put a switch if we have that kind of thing." *See Genie Indus., Inc.*, 462 S.W.3d at 7 (providing that a plaintiff show that an alternative design was capable of being developed); *see also Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) ("An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts.").

Nonetheless, in Plank's deposition, Plank did not provide any details about this alternative design, how this alternative would have prevented Taylor's injury, that this alternative was economically and technologically feasible at the time it left Bergstrom's control, or that the alternative design would not impose an equal or greater risk of harm. *See Honda*, 104 S.W.3d at 605 (requiring plaintiffs to prove "that an economically and technologically feasible alternative seat belt and release system was available and would have prevented or significantly reduced the risk of Karen's death without substantially reducing the utility to the 'intended users' of the product—namely, all automobile drivers"). Furthermore, Taylor presented no evidence of the costs of such an alternative design. *See id.* at 607 (providing that without evidence concerning the cost of incorporating an alternative design, there is no evidence of its economic feasibility); *see also Martinez*, 977 S.W.2d at 337 ("The safety benefits from its proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety."). Absent more, Plank's general statements are no evidence of a safer design alternative. Therefore, we conclude that the trial court did not err in granting summary judgment on this basis.

9

## IV. MARKETING DEFECT

We next address the remaining part of Taylor's third issue: whether he produced evidence of a negligent marketing defect.

### A. Applicable Law

To prevail on a negligent marketing claim:

> as opposed to a strict liability marketing defect claim, the appellee was required to establish four elements: (1) a duty by appellant to act according to an applicable standard of care; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury.

*Cobb v. Dall. Fort Worth Med. Ctr.-Grand Prairie*, 48 S.W.3d 820, 824–825 (Tex. App.—Waco 2001, no pet.); *Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011, pet. denied). "[T]he existence of a duty to warn of the dangers of an alleged defective product is a question of law." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996). "A manufacturer generally does not have a duty to warn or instruct about another manufacturer's products, even though a third party might use those products in connection with the manufacturer's own product." *Id.* at 614.

### B. Discussion

Taylor asserts that Bergstrom's failure to warn users of the dangers of reverse airflow constituted a negligent marketing defect, and he generally directs us to the deposition testimony of Knott as well as Bergstrom's Vice President of Engineering, John Bracy, as evidence to support his claim. After reviewing the testimony of Bergstrom's experts, we are unable to find any evidence that satisfy the elements of a negligent

10

marking defect claim. Specifically, neither of Bergstrom's experts addressed the standard of care applicable to the marketing of the heater, or how Bergstrom violated that standard, or that Bergstrom had a duty to warn users of the potential reversal of airflow. *See Ethicon*, 343 S.W.3d at 211. Because Taylor failed to present evidence establishing a negligent marketing defect claim, the trial court properly granted Bergstrom's no-evidence summary judgment on Taylor's negligent marketing cause of action.

To the extent that Taylor also argues that he raised a question of fact regarding a marketing defect claim (in addition to a negligent marketing defect claim), neither experts' testimony addressed each element of a marketing defect claim that Bergstrom challenged. *See Ethicon Endo–Surgery, Inc. v. Meyer*, 249 S.W.3d 513, 516 (Tex. App.—Fort Worth 2007, no pet.) ("A marketing defect cause of action consists of five elements: (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist, (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed, (3) the product must possess a marketing defect, (4) the absence of the warning or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure to warn or instruct must constitute a causative nexus in the product user's injury."); *see also DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412–13 (Tex. App.—Tyler 2008, no pet.) (affirming the trial court's no-evidence summary judgment when the expert's "testimony failed to address each challenged element of the [plaintiff's] marketing defect claim. Neither [the expert's] affidavit testimony nor the opinions set forth in his expert report support that the absence of a warning

11

rendered the candle unreasonably dangerous or that such was a producing cause of [the plaintiff's] injuries"). We overrule Taylor's third issue.

## V.     GROSS NEGLIGENCE

By his fourth issue, Taylor contends that he raised a fact issue regarding gross negligence. Other than in worker's compensation cases, "a finding of ordinary negligence is [a] prerequisite to a finding of gross negligence." *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Taylor has not raised a fact issue as to Bergstrom's negligence; therefore, he has not raised a fact issue as to a gross negligence cause of action. *See id.* We overrule Taylor's last issue.[4]

## VI.     CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
15th day of June, 2023.

---

[4] Because we concluded the trial court properly granted Bergstrom's no-evidence summary judgment, we need not determine Taylor's first two issues as they relate to Bergstrom's traditional motion for summary judgment. *See* TEX. R. APP. P. 47.1.

12